OPINION
This appeal arises from a jury verdict convicting Appellant, Richard Bowen, of two counts of attempted aggravated murder, one count of felonious sexual penetration, one count of theft and one count of forgery. For the following reasons this Court affirms the jury verdict and the sentences imposed by the trial court, overruling Appellant's assignments of error.
In May of 1996, Appellant was living in a basement room in the home of his father and step-mother, Harold and Susan Bowen, in Salem Township, Columbiana County, Ohio. Appellant was 24 years old at the time. He had spent the years 1989-1993 in the Army and moved into the Salem Township home soon after his discharge. Appellant is the natural son of Richard Bowen by a previous marriage. Also living in the home were the three minor children of Harold and Susan Bowen.
On Saturday, May 4, 1996, at approximately 9:00 a.m., Mr. and Mrs. Bowen left home with one of the children to run a series of errands. Appellant and the other two children remained at home. Appellant was spending the morning doing paperwork for the Citizen's Bank Bowling League, for which he served as secretary-treasurer. He was preparing for an awards banquet scheduled for that evening during which he was to distribute the funds in the league account. The record reveals that the account was approximately $6,000.00 short on the day of the banquet. (Trial Transcript, September 16-19, 1996, pp. 545-551; hereinafter "Tr.")
After Mr. and Mrs. Bowen left the house, Appellant asked his thirteen-year-old step-brother to calculate bowling averages for his league. Appellant left the boy in the kitchen and escorted his ten-year-old step-sister upstairs to her bedroom. Appellant began questioning the girl about sexual matters and then left the room to go downstairs for a few moments.
The younger child testified that Appellant returned to her bedroom and got on his knees in front of her. He told her to give him a hug. Appellant then told her to turn around and he proceeded to place his hand in her panties and insert his fingers into her vagina. When she tried to resist, Appellant put a knife to the child's throat. She raised her hands in a defensive position, but was unable to prevent Appellant from cutting a large slash across her neck. He then stabbed her repeatedly with the knife and left the room as she lay on the floor near her bed. (Tr. pp. 635-640).
Appellant's step-brother heard his sister scream, got up from the computer where he was working and saw Appellant standing nearby. He testified that Appellant stabbed him in the leg, forehead and chin. While this was happening, the younger child crawled to the staircase and fell its entire length, to the bottom of the stairs. Appellant returned his attention to her and repeatedly stabbed her again. Appellant then went to the kitchen sink, washed off the knife, threw it into a drawer and took out another knife. He returned to his step-brother and stabbed him in the back a few times.
Appellant went to the basement and returned with a portable phone which he attempted to use and some papers which he scattered in the kitchen. He went to the basement once more and returned with a golf club. Appellant's step-brother was able to get up and run from the house while Appellant pursued him with the golf club. Appellant caught up with him and struck the boy in the head three times with the golf club, the third time with such force that the head of the club broke off. (Tr. pp. 598-609)
While the younger child was alone in the kitchen she attempted to use the phone to call for help, but it had been disabled. She testified that Appellant returned to the kitchen and began stabbing her again with a different knife while she pleaded with him to stop. At this point, Appellant left the house and drove away. The older child made his way back into the house and lay down beside his sister. Their parents returned home a few minutes later and discovered them. They were taken to Salem Community Hospital and then flown by helicopter to Akron Children's Hospital.
Dr. David Andrews of Akron Children's Hospital testified that the younger child had a total of thirteen stab wounds and the older child had fifteen stab wounds, many of them life threatening. (Tr. pp. 326-327).
After leaving the Bowen residence, Appellant went to a sporting goods store, Good Sports in East Palestine, to pick up bowling trophies. Becky Burns, the owner of Good Sports, testified that she had phoned the Bowen residence shortly after 9:15 a.m. on May 4, 1996. She testified that a man answered and told her that Appellant was not home. Appellant testified at trial that he was the person who answered the phone. (Tr. p. 729)
After leaving Good Sports, Appellant went to the Moose Lodge in East Palestine to pay for the bowling banquet. After making various other stops he ended up at the Dairy Queen in Leetonia. Nancy Weikart, an employee at the Dairy Queen, had learned that Appellant was a suspect in the attack on the Bowen children and called the police. They arrived soon afterward and took Appellant into custody.
Trial testimony revealed that Appellant was having financial difficulties and was using money from the bowling league to pay his personal debts instead of depositing it into the league's bank account. Appellant testified that he forged the name of the league president on a withdrawal slip and used the slip to withdraw money from the account. (Tr. p. 716).
On May 30, 1996, Appellant was indicted on five charges by the Columbiana County Grand Jury: two counts of attempted aggravated murder in violation of R.C. § 2903.01(A) and R.C. §2923.02(A); one count of felonious sexual penetration in violation of former R.C. § 2907.02(A)(3); one count of theft in violation of R.C. § 2913.02(A)(2) and one count of forgery in violation of R.C. § 2913.31(A)(3). Counsel was appointed for Appellant. On June 6, 1996, Appellant filed a request for a bill of particulars, which was served on Appellant on June 13, 1996. Neither the original indictment nor the bill of particulars specifically alleged that Appellant used force in the commission of count three, felonious sexual penetration.
On July 10, 1996, Appellant filed a motion for continuance, which was granted, and trial was scheduled to begin on September 16, 1996.
On September 9, 1996 Appellant filed a motion for change of venue which was later overruled and a motion to compel production of exculpatory evidence which the court later found to be moot. A few days before trial the state filed a series of supplements to discovery informing Appellant of the names of additional witnesses expected to be called at trial.
A jury trial was held September 16-19, 1996. The jury found Appellant guilty on all counts. The jury also made a specific finding that Appellant had used force in the commission of count three, felonious sexual penetration. Appellant received a sentence of 10 to 25 years on each count of attempted aggravated murder, a life sentence on count three, and 24 months and 18 months in counts four and five respectively. On October 3, 1996, Appellant filed this timely appeal.
Appellant asserts eight assignments of error. We will address these assignments out of order to avoid confusion and duplication of arguments.
Appellant's third assignment of error alleges:
 "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE."
Appellant contends that prejudicial pretrial publicity contaminated the jury and prevented him from getting a fair trial. Appellant points out that many of the news stories about the crime dwelt on his fondness for a game called "Magic," even though this game was not an issue in the case. Some of the stories referred to this game as "satanic." Appellant asserts that nine out of twelve jurors admitted to having been exposed to pretrial publicity of the case. Appellant concludes that his motion for change of venue should have been granted due to the pervasive adverse pretrial publicity.
Crim.R. 18(B) provides:
 "Upon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which the trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending."
See also R.C. 2901.12(K). When reviewing a decision denying a motion for change of venue the crucial issue is, "whether the trial court's refusal to change venue violated the defendant's fair trial rights. State v. Lundren (1995), 73 Ohio St.3d 474,479, 653 N.E.2d 304, 313. However, the denial of a motion for change of venue will not be disturbed absent a clear showing of an abuse of discretion by the trial court." State v. Bies (1996),74 Ohio St.3d 320, 324. Abuse of discretion, ". . . connotes more than an error of law or judgment, it implies an unreasonable, arbitrary or unconscionable attitude." State v. Maurer (1984),15 Ohio St.3d 239, 250.
Before deciding a motion for change of venue, the trial court should make a good faith effort to seat a jury. Id. While the trial court may conduct a separate venue hearing prior to jury selection, it is not required to do so. Id. Ohio recognizes that the best test as to whether prejudice against the defendant exists in the community is the examination of jurors on voir dire. Id. In this case the trial judge did not conduct a separate hearing on the change of venue motion but did postpone ruling on the motion until after voir dire to see if a fair and impartial jury could be seated. The court overruled Appellant's motion for change of venue after the jury was seated.
Many of the jurors said that they had heard about the case and one juror mentioned that he thought the case had something to do with Dungeons and Dragons, a popular fantasy game. There is no requirement that jurors be totally ignorant of the facts and issues involved in a case. State v. Thompson (1987), 33 Ohio St.3d 1,5. An important consideration for the trial court in its determination of a motion for change of venue is whether each juror can lay aside his or her opinions, impressions and preconceptions and render a verdict based on the evidence presented in court. Id.
In the instant case, an extensive voir dire took place before the trial court overruled Appellant's motion for a change of venue. The voir dire focused in part on the effect of the pre-trial publicity surrounding the case. All the jurors who were ultimately selected testified that they could disregard any personal impressions or opinions and base their decision on evidence presented at trial.
Significantly, Appellant did not use all of his peremptory challenges during voir dire. Denial of change of venue is not error where jurors indicate that they could be fair and where a defendant does not exhaust all of his or her peremptory challenges. Maurer, supra, at 252; State v. Lewis (1993), 85 Ohio App.3d 29,37. "[A]ppellant must have been satisfied with the jury as seated, since he failed to exhaust all of his peremptory challenges." Lewis, supra, at 37. The trial court did not abuse its discretion in overruling Appellant's motion because voir dire resulted in a fair jury being seated and because of Appellant's failure to use his entire allotment of peremptory challenges. Thus, Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error, alleges:
 "THE TRIAL COURT ERRED IN NOT DISMISSING THIS CASE FOR FAILURE OF THE PROSECUTION TO PRESERVE EXCULPATORY EVIDENCE."
Appellant argues that the prosecution failed to preserve blood evidence and failed to have enzyme tests done on blood evidence to see if a person other than Appellant may have committed the crimes. Appellant claims that this was a denial of his right to due process. Appellant also asserts that the prosecution suppressed exculpatory blood evidence which it was required to reveal to Appellant in compliance with Brady v. Maryland (1963),373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
An appellant must indicate to an appellate court specifically where an alleged error may be found in the transcript or other parts of the record. State v. Miller (1988), 56 Ohio App.3d 130,132; App.R. 12(A)(2), 16(A)(7). An appellate court can not be expected to search every page of a voluminous record in the hope of serendipitously uncovering the alleged error. From our review of the record there is no indication that the state failed to preserve blood evidence and Appellant does not cite to any part of the record which would substantiate his claim.
Even if Appellant could show that blood evidence was destroyed, the record shows that there was no due process violation. The Supreme Court has held that, ". . . unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute the denial of due process of law." Arizona v. Youngblood (1988), 488 U.S. 51, 58,109 S.Ct. 333, 102 L.Ed.2d 281; see State v. Groce (1991),72 Ohio App.3d 399, 401-402; State v. Louis (1990), 70 Ohio App.3d 624,634; State v. Kelly (July 2, 1992), Mahoning App. No. 91 C.A. 166, unreported. The burden of proof is on the defendant to show the exculpatory value of the evidence and the bad faith of the state in not preserving the evidence. Groce, supra, at 402. Absent a showing of these two elements, there is no violation of the disclosure requirements as set forth in Brady v. Maryland,supra.
Prosecution witness James W. Wurster of the Ohio Bureau of Criminal Identification and Investigation Laboratory in Richfield, Ohio testified that blood typing was not done on the blood evidence (Tr. p. 501). The reason blood typing was not done, according to Mr. Wurster, was that it was not necessary since the victims survived and were able to identify Appellant as the assailant. Mr. Wurster testified that the purpose of blood typing is generally to identify the suspect and that it is not necessary to do blood typing if there are eyewitnesses who can identify the suspect. (Tr. p. 521). The prosecutor had a good faith basis for not preserving blood evidence based on his expert's conclusion that any tests done on that evidence would not be necessary to prove the prosecutor's case.
Appellant's argument that the prosecutor should have conducted further tests on blood evidence likewise fails. Crim.R. 16(B)(1)(d) requires that the prosecuting attorney make available to a defendant any results or reports of scientific tests and examinations. The rule does not require the prosecuting attorney to have such tests done and to have such reports or results prepared. State v. Daws (1994), 104 Ohio App.3d 448, 472. The prosecutor made available to Appellant any test results or reports in his possession. Appellant did not request that any additional tests be done on the evidence. Furthermore, it is sheer speculation on Appellant's part that detailed analysis of blood evidence would establish that an unknown intruder had committed the crime. For these reasons, Appellant's fourth assignment of error is likewise without merit.
Appellant's seventh assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A CONTINUANCE."
Appellant contends that the state failed to disclose discoverable evidence and potential witnesses until just a few days before trial. Appellant motioned for a continuance in order to further examine that evidence and to interview witnesses who had not yet been interviewed. Appellant argues that the trial court abused its discretion in overruling his September 9, 1996 motion for a continuance.
A trial court has broad discretion to grant or deny a motion for continuance. State v. Powell (1990), 49 Ohio St.3d 255, 259. An appellate court must affirm a trial court's decision denying a continuance unless there has been an abuse of discretion. Id. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Id. at 260.
Factors that the trial court must look to when ruling on a motion for a continuance are:
 "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance [that] gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."
State v. Unger (1981), 67 Ohio St.2d 65, 67-68.
Applying these factors to the instant case, it appears that the trial court did not abuse its discretion in denying Appellant's motion for a continuance. Appellant had already received one continuance on July 10, 1996. Appellee had previously filed an extensive answer to Appellant's discovery request which included the names of fifty witnesses, one hundred seventeen items of evidence and a list of over one hundred and fifty photos. At the September 13, 1996, motion hearing just four days before trial, Appellant's counsel stated: "[r]ecently, uh, I suppose I can say that we really got down to actually seeing what the Prosecuting Attorney's evidence was, or is, or will be." (Transcript of Motion Hearing, September 13, 1996, p. 4); (hereinafter "Motion Tr."). Although Appellant's counsel stated at the hearing that he had requested to examine medical records, exculpatory evidence and all other evidence in the prosecutor's possession, there is no indication in the record that Appellee was responsible for any delays in making that evidence available to Appellant.
Appellant contends that a motion for continuance would have given him time to interview state's witness Peggy Ashenberg, a psychological nurse specialist at Akron Children's Hospital who investigated whether there was sexual contact between Appellant and one of the victims. Appellee did not provide this witness's name to Appellant until September 11, 1996. It is unclear how interviewing Ms. Ashenberg would have helped Appellant and, in any event, was not prejudicial to Appellant because the state did not call her as a witness at trial. Appellant did have time to contact Ms. Ashenberg before trial as this was not scheduled to begin until September 16, 1996. Through discovery, Appellee had previously supplied the names of three doctors and one nurse at Akron Children's Hospital. Appellant may well have learned the identity of Ms. Ashenberg prior to September 11, 1996, had he chosen to interview those witnesses.
Appellant argues that the continuance was also necessary so that he could examine medical records of the victims. The records were made available to Appellant on September 12, 1996, only four days before trial. (Motion Tr. p. 5). These facts are analogous to those in State v. Mason (1998), 82 Ohio St.3d 144. In Mason,
the defendant requested a continuance to review 400 pages of reports and witness statements. Id. at 155. The defendant inMason argued that he needed more time to study and analyze the information. Id. The trial court denied the motion and the trial began eight days later. Id.
The Ohio Supreme Court held that the trial court did not abuse its discretion in denying the motion. Id. The Court considered the circumstances and concluded that the defendant had not shown that his counsel needed more time to prepare for trial. Id. at 155-56.
In the case at bar, Appellant had at least four days to review the medical records of the victims. Appellant's counsel stated at the September 13, 1996 motion hearing that he had already reviewed the records. (Motion Tr. p. 6). Appellant's counsel did not present any arguments at that hearing to support why further study of the medical records was needed to prepare his client's case. Furthermore, Appellant's counsel testified that he had not interviewed the doctors at Akron Children's Hospital or the state's medical expert and had not looked for an alternative medical expert. (Motion Tr. p. 5-6). Appellant failed to explain to the trial court how the medical records were significant to his defense and how a continuance to study those records would benefit his defense. The trial court did not abuse its discretion in denying the motion for a continuance and Appellant's assignment of error is without merit.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN REQUIRING THE JURY TO MAKE A FINDING OF FACT REGARDING `FORCE', WHEN THE INDICTMENT OMITTED THIS ELEMENT, AND THE TRIAL COURT ERRED IN IMPOSING A SENTENCE OF LIFE."
Count three of the indictment charged Appellant with a violation of former R.C. § 2907.12(A)(1)(b), felonious sexual penetration:
 "(A)(1) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
"* * *
 "(b) The person is less than thirteen years of age, whether or not the offender knows the age of the other person."
The sentencing provisions for violating R.C. § 2907.12(A)(1)(b) are found in R.C. § 2907.12(B):
 "(B) Whoever violates this section is guilty of felonious sexual penetration, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
Appellant argues that the force specification stated in R.C. § 2907.12(B) is an essential element of the crime of felonious sexual penetration when the prosecutor is seeking a life sentence for a violation of section (A)(1)(b). Appellant further argues that, because the force specification was not included in the indictment or bill of particulars, he did not have fair notice of the charges against him. Appellant contends that he was "blind-sided" when the trial court charged the jury to make a special finding on the force specification. Appellant asserts that he has a constitutional right to have all the essential elements of his crime stated in the indictment.
This Court has a very limited ability to review Appellant's alleged error because Appellant failed to raise this objection as to this issue below. There is no objection anywhere on the record of the trial as to the sufficiency of the indictment, the sufficiency of the jury charge, the specific finding of the jury, or the sentencing. An appellate court need not consider any error which could have been corrected by the trial court but was not called to the trial court's attention. State v. Williams (1977),51 Ohio St.2d 112 at paragraph one of syllabus. By failing to object, Appellant has waived all but plain error under Crim.R. 52(B). State v. Joseph (1995), 73 Ohio St.3d 450, 453; State v.Williams (1996), 74 Ohio St.3d 569, 579.
Notice of plain error should be taken with the utmost caution, only under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, at paragraph three of syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v. Moreland
(1990), 50 Ohio St.3d 58, 62.
Section 10, Article I, of the Ohio Constitution guarantees to an accused that the grand jury indictment will contain all the essential facts of the crime for which he or she has been accused. Harris v. State (1932), 125 Ohio St. 257, 264; State v.Shuttlesworth (1995), 104 Ohio App.3d 281, 286. The essential elements necessary to constitute a crime must be taken from a statute, as all crimes in Ohio are statutory. State v. Cimpritz
(1953), 158 Ohio St. 490, at paragraphs one and two of syllabus. Generally, if a material element of an offense is omitted from an indictment, the omission is fatal to the indictment and any conviction based on that indictment is void for lack of jurisdiction. Id. at 494. An indictment which does not contain all of the essential elements of a crime may be amended to correct the omission as long as the name and the identity of the crime are not changed and the accused has not been misled or prejudiced by the omitted element. State v. O'Brien (1987),30 Ohio St.3d 122, at paragraph two of syllabus; Crim.R. 7(D).
The critical issue to be determined is whether the force specification in former R.C. § 2907.12(B) is to be viewed as an essential element of the crime or as merely a provision which enhances the sentence. A fact or specification that does not elevate the degree of a crime but merely enhances the sentence is not required to be included in the indictment. State v. Allen
(1987), 29 Ohio St.3d 53, at syllabus. The life sentence imposed by R.C. § 2907.12(B) does not change the degree of the crime of felonious sexual penetration, which in all cases is an aggravated felony of the first degree. Although a life sentence was not generally available at the time as a sentencing option for an aggravated first degree felony (see former R.C. §2929.11), a number of specific criminal statutes overrode the general sentencing scheme and provided that a defendant may receive a life sentence on aggravated first degree felonies. R.C. § 2907.02(B), rape; R.C. § 2907.12(B), felonious sexual penetration; R.C. § 2927.24(E)(1), contaminating substance for human consumption or use. The sentence enhancing provision of R.C. § 2907.12(B) remains within the range of sentences available for former aggravated first degree felonies. Because the degree of the crime of felonious sexual penetration did not change upon finding that force was used when the victim was under the age thirteen, the increased penalty was, then, merely a penalty enhancement and did not need to be included in the indictment.
A number of Ohio cases have come to the same conclusion in reference to almost identical penalty enhancement provisions in Ohio's rape statute, R.C. § 2907.02(B). See State v. Powell
(1990), 49 Ohio St.3d 255, 261 ("where the victim is under thirteen, the use of force is not an element of rape.") State v.Sklenar (1991), 71 Ohio App.3d 444, 447 ("force is not an element of the rape of a child under thirteen years of age, but rather represents a factor to enhance the penalty."); State v. Payton
(1997), 119 Ohio App.3d 694, 701 ("The plain language of the statue allows for a conviction for rape of a minor under the age of thirteen without proof of force. Thus, force is not an element of the crime * * *").
Although it was not necessary for the indictment to include the force specification, the general (and better) practice is to include the specification in the indictment. State v. Hensley
(1991), 59 Ohio St.3d 136, 136; State v. Smelcher (1993),89 Ohio App.3d 115, 124; State v. Vaughn (1995),106 Ohio App.3d 775, 778; State v. Celes time (March 19, 1993), Sandusky App. No. S-91-50, unreported.
Nevertheless, the fact that the indictment sub judice deviated from the more standard practice which would include the force specification in the indictment does not rise to the level of plain error. The victim herself testified that Appellant used force against her to commit the crime. Appellant had the opportunity to cross-examine the victim. The jury made a specific finding that force was used. R.C. § 2907.12(B) put Appellant on notice that a finding of force would result in a life sentence. Had the alleged error not occurred, i.e., if the indictment had contained the force specification, Appellant would still have been convicted of felonious sexual penetration of a person less than thirteen years old and the mandatory life sentence would still have been imposed. Thus, Appellant's assignment of error on this issue is without merit.
Appellant's assignments of error numbers two and six both allege that the verdicts were against the manifest weight of the evidence and will be treated together:
 "THE JURY VERDICT REGARDING FORCE IN THE COMMISSION OF FELONIOUS SEXUAL PENETRATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "THE VERDICTS OF GUILT AS TO FELONIOUS SEXUAL PENETRATION AND ATTEMPTED AGGRAVATED MURDER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The Ohio Supreme Court has said that weight of the evidence relates to:
 "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387. To reverse Appellant's conviction based on the weight of the evidence, we must find that, "`the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'". Thompkins, supra, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. All three judges on the court of appeals panel must concur to reverse a conviction based on the manifest weight of the evidence.Thompkins, supra, at 389.
Appellant primarily contends that the evidence points to someone other than himself as the perpetrator of the crimes against his stepbrother and stepsister. Appellant further questions whether the eyewitness testimony of those two victims, identifying Appellant as the assailant, can be trusted because of their ages and their susceptibility to suggestion from others.
Appellant was convicted of one count of felonious sexual penetration in violation of former R.C. § 2907.11. The elements of the crime as stated in the indictment were that Appellant, without privilege to do so, did insert a part of his body into the vaginal cavity of a victim who was not his spouse and that the victim was less than 13 years of age at the time. The victim testified at trial that she was ten years old at the time of the crime. (Tr. p. 631). She also testified that Appellant asked her to go up to her room. She testified that Appellant followed her into her room and asked her questions about whether anyone had ever touched her "private area." (Tr. p. 636). She testified that Appellant told her to give him a hug, then said, "turn around" and stuck his hands inside her panties. (Tr. p. 637). The prosecutor then asked her, "Did he touch inside your private area with his finger?" to which she answered, "Yes." (Tr. p. 638). Dr. David Andrews, one of the doctors who treated the victims at Akron Children's Hospital, testified that there was a report of possible sexual molestation of the younger child, but that in his examination he did not find signs of trauma to the genitals or rectum. (Tr. p. 328). He also testified that the lack of evidence of trauma did not rule out the possibility that there had been sexual contact.
Appellant's primary rebuttal to this testimony is his own testimony at trial that the victims were mistaken about who committed the crimes. Appellant testified: "And I'm afraid that from what I have seen of the wounds and everything, that someone had done it to the children and not — I don't want to say that they're lying, I just don't really think that they got a good look at anybody who was doing it, * * *." (Tr. p. 751).
The testimony of the complaining witness, if believed, can constitute substantial credible evidence to support a conviction for a sex offense, if that testimony establishes all the essential elements of the crime. State v. Riffle (1982), 3 Ohio App.3d 202,202-203. There is no requirement that the victim's testimony be supported by corroborating testimony or other evidence. State v. Matha (1995), 107 Ohio App.3d 756, 760; Statev. Sklenar (1991), 71 Ohio App.3d 444, 447. In the instant case, the victim's testimony clearly established the elements of felonious sexual penetration. Although Appellant offered rebuttal testimony, the assessment of the weight and credibility of testimony is primarily for the trier of fact to determine. Statev. Tyler (1990), 50 Ohio St.3d 24, 32.
Appellant's contention that the victim's testimony should be discredited because of her age is not persuasive. "A child of ten years of age or older and of sound mind is conclusively presumed to be competent to testify, regardless of whether he or she was competent to testify at the time of the incident in question."State v. Clark (1994), 71 Ohio St.3d 466, 471; State v. Vaughn
(1995), 106 Ohio App.3d 775, 782. It is undisputed that the victim was more than ten years old at the time of trial and she is therefore conclusively presumed to be competent to testify.
Appellant's unsupported contention that the victim was coached in her testimony is likewise without merit. Even if she was coached, the extent to which a witness is coached and the influence such coaching may have had on his or her testimony is a question of credibility for the trier of fact to assess. State v.Mundy (1994), 99 Ohio App.3d 275, 308.
To sustain Appellant's life sentence for the crime of felonious sexual penetration the state also needed to prove that Appellant purposely compelled the victim to submit by force. Former R.C. § 2907.12(B). The evidence need not show that force was overt and brutal. State v. Dye (1998), 82 Ohio St.3d 323, 327. Force can be subtle and psychological, and depends on the age, size and strength of the parties and their relation to each other. Id.;State v. Eskridge (1988), 38 Ohio St.3d 56, at paragraph one of syllabus.
The victim testified that Appellant had his hands around her from behind and that she, "kept trying to pull his hands out of [her] panties." (Tr. p. 639). Appellant was twenty-four years old at the time, while the victim was ten. There was also testimony that Appellant had spent four years in the Army beginning in 1989, had worked in a foundry, had been a security guard and was also working as a teacher. There was testimony that the victim was in fifth grade and was not allowed to stay home alone without someone there to take care of her. (Tr. pp. 657-658). The decision of the jury to find that force had been used, based on the foregoing evidence, does not represent a manifest miscarriage of injustice.
Appellant was also convicted of two counts of attempted aggravated murder in violation of R.C. § 2923.02 and R.C. § 2903.01(A). At the time of the offense R.C. §2903.01(A) stated that: "[n]o person shall purposely, and with prior calculation and design, cause the death of another." R.C. § 2923.02 states, "[n]o person purposely or knowingly, and when purpose of knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." To constitute a "criminal attempt" there must be proof that the defendant took a substantial step toward the completion of the attempted crime. State v. Dapice (1989), 57 Ohio App.3d 99, 104. In the case of attempted aggravated murder, there must also be proof of prior calculation and design. Id. at 103. The Ohio Supreme Court has stated:
 "[w]hen the evidence reveals the presence of sufficient time and opportunity for the planning of an act of homicide and the surrounding circumstances show a scheme designed to implement the calculated decision to kill, a finding of prior calculation and design by a trier of fact is justified."
State v. Robbins (1979), 58 Ohio St.2d 74.
Both victims testified that Appellant was their assailant. They described in detail the multiple injuries that Appellant inflicted upon them. The younger child testified that Appellant cut her throat with a knife, stabbed her with the knife, then left her for a period and went downstairs. (Tr. pp. 640-641). She testified that she fell down the stairs and saw Appellant stabbing her brother. (Tr. p. 642). She stated that Appellant found another knife and stabbed her with it as she lay on the floor. (Tr. p. 643). She testified that Appellant then went down to the basement, returned, and began stabbing her brother again. (Tr. P. 645). After a second trip to the basement, she stated that he returned with a phone and dialed a number. (Tr. p. 646). Appellant went to the basement a third time and came back with a golf club. (Tr. p. 646). She saw Appellant chase her brother out of the house wielding the golf club. (Tr. p. 648). Eventually, Appellant returned to her and began stabbing her again with a different knife. (Tr. p. 648). She said to Appellant, "No more Richie, no more" and Appellant replied, "I won't hurt you any more." (Tr. p. 648). She testified that Appellant immediately stabbed her again, ran outside and drove away. (Tr. p. 648).
The older child testified that he was sitting in the kitchen calculating bowling scores when he heard his sister scream. (Tr. p. 598). He testified that he got up, turned around, and saw Appellant standing next to him. (Tr. p. 598). Appellant told him not to pick up the phone and then stabbed him twice in the left leg. (Tr. p. 599). He testified that he tried to run away, fell to the floor, and then Appellant stabbed him in the back, the forehead, and chin. (Tr. p. 602). Appellant left the room and he heard his sister scream again. (Tr. p. 603). He testified that Appellant returned to the kitchen, went to the sink, washed off the knife and then picked up a steak knife. (Tr. p. 603). Appellant used the knife to stab him two more times in the back, then left again, after which he testified that he heard his sister scream again. (Tr. p. 604)
The older child also testified that Appellant hit him in the head with the golf club three times, the third time with such force that the head of the golf club broke off. (Tr. p. 609). At that point the victim fell down and pretended he was unconscious. (Tr. p. 609). Afterward, he opened his eyes and Appellant was gone. He heard his sister screaming again from inside the house. (Tr. p. 610).
Dr. David Andrews testified that he examined both victims after they were brought to Akron Children's Hospital. He determined that both of them had multiple life-threatening injuries. The older child had fifteen stab wounds, including a punctured lung and other wounds up to six inches deep. (Tr. pp. 313-314). The younger child had thirteen stab wounds which punctured her liver, stomach, spleen and other vital organs. (Tr. p. 325)
The record contains overwhelming evidence from which a jury could have determined that Appellant consciously and deliberately intended to cause the death of his step-brother and step-sister and that his actions constituted a substantial step toward committing the crime of aggravated murder. Appellant's assignment of error is without merit.
Appellant's fifth assignment of error alleges:
 "AN ALL-PERVASIVE OF PATTERN OF PROSECUTORIAL MISCONDUCT OCCURRED WHICH ENSURED THAT APPELLANT COULD NOT RECEIVE A FAIR TRIAL, AND THE RESULTING PREJUDICE TO THE APPELLANT CONSTITUTES PLAIN ERROR."
Appellant posits that a pattern of prosecutorial misconduct prevented him from receiving a fair trial. Appellant concedes that his counsel failed to object at trial to most of what he now alleges were improper comments and actions of the prosecutor. Nevertheless, Appellant urges this court to follow the result inState v. Keenan (1991), 66 Ohio St.3d 402, in which the Ohio Supreme Court reversed a conviction due to prosecutorial misconduct in spite of the failure of defendant's counsel to object to the errors at trial.
"The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." State v. Apanovich (1987), 33 Ohio St.3d 19, 29. In determining whether a prosecutor's conduct is reversible error this court must first determine whether the conduct was improper, and second, this court must consider the effect the misconduct had on the jury in the context of the entire trial. Keenan,supra, at 410.
Appellant contends that failure of the state to preserve blood evidence prejudiced him and prevented him from defending himself by possibly showing that an unknown intruder committed the crimes. We have already determined in our earlier analysis of assignment of error number four, that the record does not reflect that such evidence was destroyed.
Appellant submits that the prosecutor intentionally reversed a number of slides which were shown to the jury. The slides depicted very graphic injuries of both victims. Appellant contends that the slides were reversed to make the injuries appear as if they had been inflicted by a left-handed person. There was testimony that Appellant was left-handed. The record reveals that this problem was immediately brought to the attention of the jury even as the slides were being shown. (Tr. pp. 314, 318-319, 321). Nothing in the record reveals that this was anything other than a simple mistake in loading the slides into the projector, a mistake which Appellee's witness Dr. Andrews immediately brought to the attention of the jury.
Appellant maintains that the state's failure to reveal the identity of witness Peggy Ashenberg until a few days before trial and the state's failure to call her as a witness indicates that her testimony would have been favorable to Appellant. The failure of the prosecution to call a witness does not give rise to an inference that the witness' testimony would have been favorable to the accused. State v. Daugherty (1971), 26 Ohio App.2d 159,163-164. Appellant can not show that he was prejudiced by the failure of Ms. Ashenberg to testify, inasmuch as he knew prior to trial that she was a potential witness, he could have interviewed her but did not and he could have taken steps to call her as a defense witness but did not.
Appellant suggests that the prosecutor improperly coached witnesses to imply that Appellant had taken a shower after the crimes were committed in order to wash away any evidence of blood. A prosecutor is free to prepare witnesses and review then expected testimony in advance of trial in order to insure that the case proceeds in an orderly and coherent fashion. State v.Prater (1983), 13 Ohio App.3d 98, 101. Appellant alleges only that the prosecutor may have talked to his witnesses in a perfectly permissible manner and therefore, there is no error.
Appellant contends that the prosecutors improperly commented during closing argument on their own feelings and beliefs regarding Appellant's guilt. Prosecutor Herron referred to Appellant as the one who, "tried to take [the victim's] head off." (Tr. p. 794). Prosecutor Hartford called Appellant the, "man who butchered children." (Tr. p. 843). Appellant refers to a total of nine instances of allegedly improper comments by the prosecutors during closing arguments.
Counsel for both sides is given wide latitude in closing arguments to present their most convincing position. State v.Phillips (1995), 74 Ohio St.3d 72, 90. A prosecutor's use of emotionally charged epithets is not unfair per se, but must be viewed in the context of the entire trial to see if due process has been denied to the defendant. Keenan, supra, at 408; Dardenv. Wainwright (1986), 477 U.S. 168, 181, 106 S.Ct. 2464,91 L.Ed.2d 144. The opinions of the prosecutors during closing arguments were substantiated with numerous references to testimony and other evidence presented during trial. The prosecutors' comments must also be viewed in light of the testimony of the two victims who identified Appellant as the one who attacked them. Further, the trial judge instructed the jury that final arguments by the attorneys are not evidence and must not be treated as evidence. (Tr. p. 785). Thus, in light of the record as a whole, the prosecutors' comments did not rise to the level of misconduct.
Appellant argues that it was misconduct for the prosecution to withhold the victim's medical records until four days before trial. As reviewed under assignment of error number seven, the record does not support the conclusion that the prosecution withheld the medical records or interfered with Appellant's access to those records during discovery. Prosecutor James Hartford testified at a pretrial motion hearing that he had made all the evidence in the case, including medical records, available for inspection by Appellant. (Motion Tr. p. 9) Appellee's original Answer to Discovery Request filed on June 13, 1996 also stated that inspection of reports, examinations, or tests made in connection with the case was available by appointment. Appellant cites to nothing in the record which indicates that Appellee prevented access to medical records which were in the possession of the prosecutors.
Appellant's counsel failed to object at trial to all but two of the alleged incidents. Appellant did object to the delay in access to medical records and the delay in getting the name of state's witness Peggy Ashenberg. Generally, errors not objected to at trial are waived and this Court is limited to reviewing for plain error. State v. Johnson (1979), 46 Ohio St.3d 96, 103. Because Appellant did object to part of the alleged prosecutorial misconduct, and because the conduct must be viewed in the context of the entire trial to determine its effect on the jury, all of Appellant's alleged incidents of misconduct are reviewable by this Court. Keenan, supra, at 410.
We find no pattern of misconduct by the prosecution. Appellant can point to only two incidents of prosecutorial behavior that in any way conceivable could be called misconduct: reversal of slides during trial and personal opinions and epithets used during closing argument. In the context of the entire trial, and particularly in light of the overwhelming impact of the testimony of the two victims in this case, the prosecutors' conduct could not have had any material effect on the outcome of the trial. The record reflects Appellant received a fair trial and this assignment of error is without merit.
Appellant's eighth assignment of error alleges:
 "THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF APPOINTED COUNSEL, AND WAS DENIED HIS RIGHT TO EFFECTIVE COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION."
Appellant argues that because his appointed counsel failed to object to numerous incidents of alleged prosecutorial misconduct, failed to interview witnesses, neglected to timely review medical records, failed to present exculpatory evidence (particularly blood evidence) and failed to present Appellant's financial records which may have rebutted the alleged motive for the crimes, counsel was ineffective in his defense. Appellant also contends that his relationship with his attorney had deteriorated to the point where his counsel filed a motion to withdraw just a few days before trial. Appellant urges this Court to review his counsel's effectiveness under the standards set forth inStrickland v. Washington (1984), 466 U.S. 668 and asks us to reverse his conviction and remand for a new trial.
The defendant has the burden of proving ineffective assistance of counsel. State v. Lott (1990), 51 Ohio St.3d 160, 175. A defendant has a right to counsel as guaranteed by the United States and Ohio Constitutions. However, a defendant is not guaranteed the right to the best or most brilliant counsel.Jackson v. Maxwell (1962), 174 Ohio St. 32, 34. In Ohio, a properly licensed attorney is presumed competent. Lott, supra, at 174. A defendant must show, "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive the defendant of a fair trial." Strickland, supra, at 687. In order to establish that counsel is deficient, and "appellant must show counsel's performance fell below an objective standard of reasonable representation." State v. Keith (1997), 79 Ohio St.3d 514, 534. To meet the second prong of the test, Appellant, ". . . must prove that there exists a reasonable probability that were it not for counsel's errors, the results of the trial would have been different." Id.
Appellant's claim that his trial counsel's failure to object to prosecutorial misconduct amounted to ineffective assistance is not persuasive. As addressed in assignment of error number five, counsel did preserve the issue of prosecutorial misconduct, at least in part, for review. Additionally, "failure to object is not a per se indication of ineffective assistance of counsel because counsel may refuse to object for tactical reasons." Statev. Riffle (1996), 110 Ohio App.3d 554, 557.
Appellant's counsel did file various pretrial motions to correct alleged errors in the discovery process. Although the motions were ultimately overruled or held to be moot (Motion Tr. pp. 10, 22), counsel did present competent arguments in support of each motion. Appellant's counsel also obtained discovery of every evidentiary item that he requested. (Motion Tr. p. 81-83)
Appellant claims that his counsel failed to properly investigate the case and to call witnesses in his defense. When an appellant alleges ineffective assistance of counsel, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." State v. Bradley
(1989), 42 Ohio St.3d 136, 146. Appellant's counsel did review all of the state's evidence prior to trial. (Motion Tr. pp. 5-6, 82). The record does not indicate that counsel failed to interview any witness except for Peggy Ashenberg. Even assuming that Appellant's counsel did fail to conduct a proper pre-trial investigation, given the testimony of the victims as well as others, no reasonable probability exists that the outcome of the trial would have been different but for counsel's errors.
Appellant argues that his counsel could have called witnesses to testify about seeing large amounts of money in Appellant's car and room immediately prior to the crimes. Appellant suggests that such evidence would have rebutted the prosecution's theory that the attempted murders was to cover up a theft. This allegation of ineffectiveness is based on alleged facts and testimony not appearing in the record, and such allegations may be best addressed through post-conviction relief, not through direct appeal. State v. Cooperrider (1983), 4 Ohio St.3d 226, 228.
Furthermore, failure to call witnesses does not, in and of itself, constitute ineffective assistance of counsel. The calling of witnesses is a tactical decision generally left to the judgment of counsel. State v. Riffle, supra, at 556.
Appellant's assertion that his counsel could have presented blood test evidence that would have shown that another person with a different blood type committed the crimes is also based on facts not in the record. This Court must again defer to counsel's tactical decision not to pursue such testing inasmuch as the results may have been just as likely to further implicate Appellant.
Appellant has failed to show from the record that his counsel's performance was deficient or that any deficient performance denied him a fair trial. The evidence presented at trial, particularly the victim's testimony and that of those witnesses who had contact with the children immediately after the crimes occurred, adequately established Appellant's guilt. The outcome of the trial would not have been different but for counsel's alleged errors. Appellant's eighth assignment of error is without merit.
For the foregoing reasons we find that the assignments of error advanced by Appellant are without merit. Accordingly, we affirm the trial court judgment in all respects.
Vukovich, J., concurs.
Cox, P.J., concurs.
APPROVED:
 ________________________________ CHERYL L. WAITE, JUDGE