OPINION
Defendant-appellant, Shawn K. Brust, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of murder in violation of R.C. 2903.02, with a firearm specification.
By indictment filed August 28, 1997, defendant was charged with one count of aggravated murder in violation of R.C.2903.01 with two firearm specifications: one under R.C. 2941.145, and a second pursuant to R.C. 2941.146 asserting defendant discharged a firearm from a motor vehicle ("drive-by specification"). In essence, defendant was charged with having shot and killed Anthony Truss on August 5, 1997 as defendant drove by him on a street in Urbancrest, Ohio. Defendant pled not guilty to all the charges and proceeded to a jury trial. Defendant was found not guilty of the aggravated murder charge, but guilty of the lesser-included offense of murder. He was also found guilty of the firearm specification but not guilty of the drive-by specification. The trial court sentenced defendant accordingly and denied defendant's post-trial motions for a new trial and for acquittal.
Defendant timely appeals, assigning the following errors:
 I. THE DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL WAS DENIED WHEN THE PROSECUTION FAILED TO PROVIDE APPELLANT WITH POTENTIALLY EXCULPATORY EVIDENCE PURSUANT TO CRIMINAL RULE 16. THE TRIAL COURT SHOULD HAVE GRANTED APPELLANT'S MOTION FOR A NEW TRIAL.
 II. THE MISCONDUCT OF THE PROSECUTOR DURING THE REBUTTAL OF CLOSING ARGUMENT WAS EXTREMELY PREJUDICIAL AND IT SO TAINTED THE TRIAL WITH UNFAIRNESS THAT THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION X OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION IN LIMINE REGARDING A HEARSAY STATEMENT THE DECEASED MADE AFTER HE WAS SHOT.
 IV. THE TRIAL COURT ERRED WHEN IT DID NOT GRANT DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 AT THE END OF THE STATE'S CASE-IN-CHIEF, AT THE CLOSE OF THE DEFENDANT'S CASE-IN-CHIEF, AND WHEN IT OVERRULED DEFENDANT'S POST-TRIAL MOTION FOR ACQUITTAL.
 V. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR A NEW TRIAL BASED ON THE AFFIDAVIT OF A JUROR WHICH STATED THAT SHE SAW A LITTLE CUT ON THE DECEASED'S TROUSERS DURING THE CROSS-EXAMINATION OF PARAMEDIC PERRY.
 VI. THE TRIAL COURT ERRED BY SEALING DOCUMENTS PRIOR TO THE CROSS-EXAMINATION OF DETECTIVE ZACK SCOTT WHICH WERE TENDERED TO THE COURT BY THE PROSECUTOR PURSUANT TO APPELLANT'S DEMAND FOR DISCOVERY. IF THE DOCUMENTS CONTAIN BRADY MATERIAL OR INCONSISTENCIES WITH SCOTT'S TRIAL TESTIMONY, APPELLANT'S CONVICTION MUST BE REVERSED.
 VIII. THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE STATE'S EXHIBIT NO. 5E, THE BALLISTICS REPORT, AND DID NOT ADMIT DEFENSE'S EXHIBIT DD-1, THE REPORT ON THE GUN RESIDUE COLLECTION.
 VII. IT WAS PROSECUTORIAL MISCONDUCT FOR THE STATE TO VIOLATE THE COURT'S ORDER REGARDING SEPARATION OF WITNESSES.
 IX. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S PRE-TRIAL MOTION TO SUPPRESS THE IDENTIFICATION TESTIMONY PROVIDED BY NATHANIEL COLLINS AND HIS SUBSEQUENT IN-COURT IDENTIFICATION. ONCE THE TRIAL COURT PERMITTED HIS CONFUSING, INCONSISTENT AND CONTRADICTORY IDENTIFICATION TESTIMONY, THE COURT SHOULD HAVE ACQUIESCED TO THE JURY'S REQUEST TO REVIEW COLLINS' TESTIMONY. INSTEAD, THE COURT DENIED THE REQUEST.
Defendant's errors will be addressed out of order for ease of disposition. In his ninth assignment of error, defendant contends the trial court erred when it denied his motion to suppress and allowed Nathaniel Collins' identification testimony to be admitted at trial.
The due process clauses of the Fifth andFourteenth Amendments to the United States Constitution prohibit the admission of unreliable identification testimony derived from suggestive identification procedures. Stovall v. Denno (1967),388 U.S. 293. Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. State v. Blackwell (1984), 16 Ohio App.3d 100,103, citing Neil v. Biggers (1972), 409 U.S. 188, 198. Even if the identification procedure utilized is suggestive, as long as the identification itself is otherwise reliable the identification is admissible. Id. at 199.
Shortly after the shooting, while lying on the ground bleeding, Truss told Deputy Robert Cooper that the driver of a tan Isuzu Trooper shot him. Detective Zach Scott of the Franklin County Sheriff's Office went to the area of the shooting with a photo array of six individuals, which included a picture of defendant, to find witnesses that could help identify who shot Truss. Scott first came upon Collins and asked him whether he could identify the person who had been driving the Isuzu. Scott showed Collins six photos, and Collins immediately selected defendant.
Scott testified that the photo array consisted of six photographs of white males with similar characteristics. Scott gave the pictures to Collins and asked him if he recognized anyone who was the driver of the Isuzu. He told him that he did not have to select anyone out of the array, and Scott did not tell Collins whether defendant was in the photo array. Collins was asked to look through all the pictures, defendant's picture being the third of the six. After Collins selected defendant's picture, Scott testified that he did not tell Collins he selected the suspect, or anything that would support Collins' identification. To that extent, the procedure was not suggestive.
Nonetheless, the six photos used arguably were suggestive. All photographs, other than that of defendant, were of young white males with shoulder length light brown to blond hair and bangs on their foreheads. Defendant's picture depicts a man with the same color hair, but shorter hair without bangs.
However, even assuming that the procedure used was impermissibly suggestive, "[u]nnecessary suggestiveness alone *** does not require exclusion of a photographic identification. Rather, the identification process must be so unreliable under the totality of the circumstances as to create a substantial likelihood of irreparable misidentification before the identification will be excluded." State v. Biddings (Dec. 6, 1990), Franklin App. No. 89AP-822, unreported; see, also, State v.Berry (June 29, 1999), Franklin App. No. 97AP-964, unreported.
To determine whether, under the totality of the circumstances, an identification was reliable, even though the confrontation procedure was suggestive, the following factors should be considered: "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, supra, at 199.
The photo array was shown to Collins on August 18, thirteen days after the shooting. While Collins did not see the actual shooting, he testified that he had seen the Isuzu in the neighborhood three or four times before the shooting and that each time he had seen the same man driving the Isuzu. Collins even testified at trial that he saw the Isuzu a couple of hours before the shooting. Collins selected defendant out of the photo array without hesitation, and testified that he was sure defendant was the man who drove the Isuzu. Given all the above, Collins' identification was reliable, and no substantial likelihood of irreparable misidentification existed. To the extent defendant argues that the testimony was confusing, inconsistent and contradictory, questions of weight and credibility of the testimony are within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trial court did not err in denying defendant's motion to suppress.
In his ninth assignment of error, defendant also contends the trial court erred in not allowing the jury to review a transcript of Collins' testimony during their deliberations. Whether to permit a jury to review or rehear testimony lies within the sound discretion of the trial court. State v. Davis (1991),62 Ohio St.3d 326, 339-340, citing State v. Berry (1971), 25 Ohio St.2d 255;State v. Higgins (1990), 61 Ohio App.3d 414, 421. Defendant has not argued, nor can we find, that the trial court abused its discretion by denying the jury's request to review Collins' testimony. Defendant's ninth assignment of error is overruled.
Defendant's eighth assignment of error asserts prosecutorial misconduct in the prosecution's violating the court-ordered separation of witnesses. Defendant suggests that because paramedic Jennings Perry came prepared to discuss a particular aspect of the treatment Truss received at the scene of the shooting, the prosecution must have alerted him to previous testimony questioning that treatment. Perry acknowledged at trial that before his testimony the prosecution had a meeting with the paramedics involved, and questioned him concerning relevant issues. Perry, however, testified that he was not informed of any testimony given at the trial. Defendant did not object to Perry's testimony and did not request any relief for any alleged violation of the court's order separating witnesses.
While the trial court unquestionably ordered that any witnesses who would testify at trial were to be separated and excluded from the courtroom, defendant has not pointed to anything in the record demonstrating a violation of the order. However, even if defendant had set forth facts that showed a violation, defendant failed to object to Perry's testimony and thus has waived all but plain error. State v. Graham (Oct. 31, 1997), Clark App. No. 96-CA-106, unreported, citing State v. Evans (June 22, 1994), Montgomery App. No. 13948, unreported. Under the plain error doctrine, error is waived unless the outcome of the trial would clearly have been otherwise except for the error. State v.Long (1978), 53 Ohio St.2d 91. Rather than make the required showing to demonstrate plain error, defendant relied heavily on Perry's testimony in an attempt to show that the treatment Perry provided Truss was deficient. Defendant's eighth assignment of error is overruled.
Defendant's first assignment of error contends the prosecution violated his right to a fair trial by not providing to him potentially exculpatory evidence it had in its possession. On August 18, 1997, an agent from the Bureau of Criminal Identification and Investigation ("BCII") collected samples from the inside of defendant's car to test for the existence of residue that remains after a gun is fired. Because of a backlog at BCII, the swabs were never tested for residue. Defendant did not learn that the swabs existed until almost midway through trial. After the guilty verdict, defendant filed a motion for a new trial pursuant to Crim.R. 33(A)(2), alleging that prosecutorial misconduct in not disclosing the swabs deprived defendant of a fair trial. The trial court denied the motion, finding no prejudice to defendant from the prosecution's failure to disclose the existence of the swabs.
Motions for a new trial pursuant to Crim.R. 33 are addressed to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. State v. Schiebel
(1990), 55 Ohio St.3d 71, paragraph one of the syllabus; State v.Zerla (Mar. 17, 1992), Franklin App. No. 91AP-562, unreported. However, when a defendant alleges prosecutorial misconduct, a due process analysis determines whether defendant was deprived of his due process right to a fair trial. State v. Johnston (1988),39 Ohio St.3d 48, 59.
"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."Brady v. Maryland (1963), 373 U.S. 83, 87; see, also, Crim.R. 16(B)(1)(f). "Brady makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. *** [T]he Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Arizona v.
Youngblood (1988), 488 U.S. 51, 57. In a case where potentially exculpatory evidence is destroyed, Youngblood requires the defendant to prove that the failure to preserve the evidence was done in bad faith. Id. See, also, State v. Berry (Feb. 12, 1999), Montgomery App. No. 17155, unreported; State v. Fort (July 18, 1997), Lucas App. No. L-96-299, unreported; State v. Lewis (1990),70 Ohio App.3d 624, 634 ("[T]he suppression or failure to preservepotentially useful evidence violates constitutional due process only upon a showing of bad faith.") (Emphasis sic); State v. Groce
(1991), 72 Ohio App.3d 399, 401-402; but, see, State v. Roughton
(1999), 132 Ohio App.3d 268.
Accordingly, defendant was required to demonstrate either that the swabs were material, exculpatory evidence or that the failure to disclose the potentially useful evidence was done in bad faith. Fort, supra. Exculpatory evidence is material only if its exculpatory nature was known before it became unavailable and it is of such a nature that no comparable evidence reasonably could be produced by the defense. California v. Trombetta (1984),467 U.S. 479, 489. Further, defendant must show that had the evidence been disclosed to the defense, the result of the proceeding, with reasonable probability, would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnston, supra, at paragraph five of the syllabus, following United States v.Bagley (1984), 473 U.S. 667. The prosecution is under no constitutional duty to perform any particular tests to determine whether the evidence is exculpatory. Trombetta, supra.
Defendant has not shown that the swabs were material, exculpatory evidence. Because no tests were performed on the swabs, the exculpatory nature of the swabs was not known. Moreover, even if the test had shown no residue, defendant was not prejudiced. Defendant was found not guilty of the drive-by specification, suggesting the jury did not believe defendant had shot Truss from his car, but defendant still was found guilty of Truss' murder. Defendant has failed to show a reasonable probability that if the evidence had been disclosed to defendant, the outcome of the trial would have been different, or the confidence in the outcome was undermined by the failure to disclose. Johnston, supra.
Moreover, defendant does not argue that the prosecution withheld the swabs in bad faith, and the record contains no evidence of bad faith. Rather, the prosecution did not disclose the swabs because they were never tested, leaving no results to be turned over to defendant. While not evidence of bad faith, the prosecution's action may suggest a poor decision: "[b]ecause the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." United States v. Agurs (1976), 427 U.S. 97, 108. Defendant's first assignment of error is overruled.
In a related assignment of error, defendant's seventh assignment of error contends the trial court erred in not admitting into evidence a report from Gary Wilgus, a BCII agent. The report noted collection of gun residue from defendant's vehicle. The trial court excluded the report on the grounds that it was not relevant. Defendant argues that if that report was excluded, then the ballistic report from BCII should also have been excluded.
A trial court has broad discretion in admitting or excluding evidence, and its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to the defendant. State v. Hymore (1967), 9 Ohio St.2d 122.
Even if the report was improperly excluded, the failure to admit it did not prejudice defendant. Wilgus already testified that he examined the inside of defendant's car for gunshot residue on August 25, 1997. The report simply reiterated that Wilgus used a collection kit to collect samples of gunshot residue from the car, if any existed. The trial court has discretion to admit or exclude cumulative evidence. State v. Campbell (1994), 69 Ohio St.3d 38,51. The trial court did not abuse its discretion in excluding Wilgus' report. Defendant's seventh assignment of error is overruled.
Defendant's second assignment of error alleges prosecutorial misconduct during the prosecution's rebuttal closing argument. Specifically, defendant asserts the prosecution "introduced" evidence that had not been introduced during trial, impugned the integrity of defense counsel, introduced a new theory of how the shooting may have occurred, and misstated the facts of the case. Each allegation will be addressed individually.
The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.State v. Smith (1984), 14 Ohio St.3d 13, 14; State v. Lott
(1990), 51 Ohio St.3d 160, 165. The closing argument is considered in its entirety to determine whether it was prejudicial, State v.Moritz (1980), 63 Ohio St.2d 150, 157, and considerable latitude is permitted in closing arguments. State v. Mauer (1984), 15 Ohio St.3d 239,269. The prosecution, however, may not express a personal belief or opinion as to the credibility of a witness or the guilt of the accused. State v. Thayer (1931), 124 Ohio St. 1.
Because defendant did not object to the prosecution's remarks, all error is waived but for plain error.
1. INTRODUCTION OF NEW EVIDENCE
Defendant contended throughout trial that Truss' death was caused by poor medical treatment. When paramedic Perry arrived at the scene, Truss was sitting in a pool of blood; Perry felt that Truss was in shock. Perry testified that the paramedics cut off Truss' pants to assess his wounds, and they found both an enlarged scrotum and an entrance wound in his right groin. The paramedics did not find an exit wound nor did they believe Truss was bleeding profusely.
Instead of placing direct pressure on Truss' wound, the paramedics applied MAST trousers. When inflated, MAST trousers are designed to increase blood pressure and to move blood from the extremities into the chest area so it will keep the heart and lungs functioning. The paramedics used the MAST trousers because they felt Truss had bled all he could, and the remaining blood in his body should be used to keep his vital organs functioning.
In using MAST trousers, the paramedics normally cut off the victim's pants and place the MAST trousers on a naked patient. Perry testified on direct examination that he cut Truss' pants off; on cross-examination he said he attempted to cut them off but could not. When handed the pants to find a cut in them, Perry could not. Nonetheless, during the rebuttal closing argument, the prosecution showed the jury the pants and a small cut in the waistband of the pants. Defendant asserts that the prosecutor's "testimony" in that regard was improper because it introduced new evidence and it improperly vouched for Perry's testimony.
The pants were admitted into evidence at the close of the prosecutor's case-in-chief; they were not new evidence. Because the pants were in evidence, the prosecution's comment about the cut in the pants was proper, even though not particularly persuasive.
Defendant nonetheless contends that five people saw the pants before the prosecution's rebuttal argument and none observed a tear in the pants, seeming to suggest the prosecution tampered with the pants. To the contrary, however, a juror provided an affidavit stating she observed the same small cut in the waistband of the pants when Perry was examining them. After the rebuttal argument, the court questioned the court reporter, who indicated the prosecution never possessed the pants after they were admitted into evidence and never attempted to alter the pants in any way.
Absent something more than defendant's arguing that the pants must have been tampered with because he had not seen the cut, the record fails to support the alleged error.
2. IMPUGNING THE INTEGRITY OF DEFENSE COUNSEL
Defendant complains that during closing argument, the prosecution referred to the defense as playing games in representing defendant. While the statement arguably is improper, the outcome of the trial would not have clearly been different but for the statement.
3. NEW THEORY OF THE CRIME
Defendant next contends the prosecution presented a new theory about how the crime could have been committed by introducing new evidence in its rebuttal argument. Specifically, defendant complains the prosecution set forth different positions the victim could have been in to explain how he sustained his wounds.
The prosecution's argument setting forth various theories about the shooting was not improper. No one witnessed the actual shooting or knew exactly how Truss was positioned when he was shot. The coroner, Dr. Fardal, testified to the path of the bullet, but preliminarily stated that he always assumes the victim is in a normal, upright position because he does not know the position of the victim as it relates to the location of the shooter. On cross-examination, Fardal admitted that the wounds were consistent with someone standing over a victim lying on the ground, or a victim running and falling; that the bullet's path could have originated in many different ways.
The prosecution's comments were fair inferences from the coroner's testimony to explain how the shooting might have occurred. Both the prosecution and the defense have wide latitude in summation concerning what the evidence has shown and what reasonable inferences may be drawn from it. State v. Morris (May 5, 1998), Franklin App. No. 97AP-897, unreported. Because the prosecution's remarks reflected testimony from the trial, they were not improper.
4. PROSECUTION'S MISSTATEMENT OF FACTS
Finally, defendant points out the prosecution's alleged misstatements of fact during closing argument. Initially, defendant contends the prosecution improperly stated that the victim's medical records nowhere stated that Truss was bleeding profusely. While the prosecution indeed noted that nowhere in "that report" does it state that Truss was bleeding profusely, what report was referenced is unclear from the transcript. Medical reports from Grant Hospital stated that Truss was "exsanguinating," which is the process of losing blood. Whether that amounts to profuse bleeding may be debatable, but even if the remark was a misstatement, it did not clearly affect the outcome of the trial so as to rise to the level of plain error. Moreover, the jury had the medical records as evidence to examine, and the court instructed that the closing arguments of counsel were not to be considered evidence. The jury is presumed to follow instructions given by the court. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus.
Next, defendant notes that the prosecution said the gun used in the shooting was defendant's even though the gun was known to be owned by defendant's brother. Actually, the prosecution rhetorically asked the jury "[h]ow much evidence do you have that this gun belonged to somebody else? Zero." (Tr. 1197.) The statement was correct: neither the prosecution nor the defense ever called the true owner of the gun to testify to ownership because ownership of the gun was never an issue. Joseph Birmele, an employee of a pawnshop in Columbus, testified that defendant pawned the same gun at least three times. On the day of the shooting, defendant came to the store and redeemed the gun. The prosecution's remark would not have clearly changed the outcome of defendant's trial.
Defendant also asserts the prosecution improperly stated that "[t]he defendant told you what he was going to do" and that he "was going up to Urban Hollow to go get him." While, as defendant notes, defendant did not testify, Sandra Thompson, a bartender at a bar in defendant's hometown, testified that sometime in July of 1997, defendant came into the bar and told her that he had some trouble with people in Urbancrest. She testified he told her "those niggers over there had fucked him out of his money and they had pulled a gun on him, and he was going to go back with a gun and either get his money or his drugs." (Tr. 213.) Accordingly, the prosecution's remarks are not unfounded on the record. Lott, supra, (allowing prosecution wide latitude as to what reasonable inferences may be drawn from evidence presented). Defendant's second assignment of error is overruled.
Defendant's fifth assignment of error asserts the trial court erred in denying his motion for a new trial without an evidentiary hearing. Defendant sought a new trial pursuant to Crim.R. 33(A)(2) as it related to the cut on Truss' pants. As required by Crim.R. 33(C), the motion was supported by affidavits showing the truth of the allegations in the motion: three attorneys that represented defendant and a forensics expert swore in affidavits submitted with defendant's motion that they did not see any cut or tear on Truss' pants. The prosecution submitted a juror's affidavit stating that she observed a small cut in the pants during the questioning of paramedic Perry.
The trial court has discretion to determine whether a motion for a new trial and the materials submitted with the motion warrant an evidentiary hearing. State v. Prichard (Nov. 26, 1999), Hamilton App. No. C-990148, unreported (finding no abuse of discretion in denying motion for new trial based on prosecutorial misconduct without evidentiary hearing); Toledo v. Stuart (1983),11 Ohio App.3d 292. The trial court determined a hearing was not required on defendant's motion because the small cut found on the pants was irrelevant, as it could not rehabilitate the witnesses' testimony that he attempted to cut the pants off at the scene: "His testimony was obviously wrong." (Trial Court's Decision on Post-Trial Motions p. 4.) Finding no evidence of tampering, the court also noted that defense counsel failed to object.
An abuse of discretion connotes more than error of law or judgment, it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. State v.Powell (1990), 49 Ohio St.3d 255, 260. Given all the above, coupled with defendant's not indicating what more he could have gained from an evidentiary hearing, the trial court did not abuse its discretion in denying defendant's motion without such a hearing. Defendant's fifth assignment of error is overruled.
Defendant's sixth assignment of error contends the trial court erred by sealing certain documents prior to Detective Scott's cross-examination and in not permitting defense counsel to review the documents. After Scott testified, defense counsel requested from the prosecution any of Scott's statements that were inconsistent with his testimony at trial, or that contained evidence favorable to the defendant and material to either guilt or punishment. Crim.R. 16(B)(1)(f) and (g). The trial court reviewed the documents presented by the prosecution and found them to be investigative, non-exculpatory summaries, and not discoverable under Crim.R. 16. The documents were then sealed for this court's review.
Before a writing or recording may be considered a "statement" for purposes of Crim.R. 16(B)(1)(g), it must be shown that the witness "prepared, signed, or adopted the statement, or that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so." State v. Cummings
(1985), 23 Ohio App.3d 40, paragraph one of syllabus; State v.Johnson (1978), 62 Ohio App.2d 31, 37. A police officer's notes of an interview of a witness during an investigation do not constitute a written or recorded statement. State v. Allen (1990),69 Ohio App.3d 366, 372; State v. Washington (1978), 56 Ohio App.2d 129, paragraph two of the syllabus. Moreover, "[t]hose portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2)." State v. Jenkins (1984), 15 Ohio St.3d 164,225.
The documents presented to the trial court largely are notes and summaries of interviews and discussions with witnesses and other officers. They are not statements and are not required to be disclosed to defense counsel. The only possible exception relates to a witness that did not testify at trial. Because the witness did not testify, however, the notes would be discoverable only if they are favorable to defendant. The trial court apparently, and properly, found nothing exculpatory about the interview. Defendant's sixth assignment of error is overruled.
Defendant's third assignment of error contends the trial court erred in admitting hearsay testimony of the victim. Although the trial court admitted the statements pursuant to the "dying declaration" hearsay exception found in Evid.R. 804(B)(2), defendant contends the prosecution failed to lay the proper foundation to admit the statements.
After he was shot and lying in the street, Truss made statements to Deputy Cooper, the first police officer on the scene. Cooper testified Truss told him (1) the vehicle involved was a tan Isuzu Trooper, and (2) Truss had seen a gun. Cooper got to the scene four to five minutes after he received the call concerning the shooting. When he arrived at the scene, Truss was losing a large amount of blood and was complaining that he felt he was going to pass out.
To admit a statement as a dying declaration, the declarant must believe that death is imminent. Evid.R. 804(B)(2). Cooper's testimony alone does not support a finding that Truss knew death was imminent. State v. Tesfagiorgis (Aug. 12, 1999), Franklin App. No. 98AP-1215, unreported, citing State v. Woods
(1972), 47 Ohio App.2d 144, 147 (finding that the deceased's mortal wound and critical condition alone were not enough to establish that the deceased sensed that death was impending). Cf.State v. Ross (Oct. 12, 1999), Mahoning App. No. 96CA-247, unreported (finding death to be imminent where declarant shot in chest, bleeding from the chest and mouth, and declarant kept saying that he felt like he would not make it).
Nonetheless, Truss' statements were admissible as excited utterances. Evid.R. 803(2) permits the admission of statements that relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To determine whether a statement is admissible as an excited utterance, the trial court must reasonably find:
 (a) [T]hat there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. State v. Taylor (1993), 66 Ohio St.3d 295, quoting Potter v. Baker (1955), 162 Ohio St. 488, at paragraph two of the syllabus. (Emphasis sic.)
Truss' statement meets that test. He was shot once, an occurrence clearly startling enough to produce a nervous excitement in Truss sufficient to still his reflective faculties and render his statement or declaration spontaneous and unreflective. Moreover, Truss made the statements within minutes of being shot, his statement indicated the car involved, and he had an opportunity to see what had happened. Satisfying the test as set forth above, Truss' statement was admissible as an excited utterance and the trial court did not err in admitting it, albeit for the wrong reason. Tesfagiorgis, supra. Defendant's third assignment of error is overruled.
Defendant's fourth assignment of error asserts the trial court erred in denying his motions for acquittal.
Crim.R. 29(A) requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses alleged in the indictment. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Apanovitch (1987), 33 Ohio St.3d 19, 23. In reviewing a ruling on a Crim.R. 29(A) motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state. State v. Wolfe (1988), 51 Ohio App.3d 215, paragraph one of the syllabus; State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported.
At the end of the prosecution's case-in-chief, defendant moved for a judgment of acquittal on the basis that the state presented no evidence to support the drive-by specification and no evidence of premeditation or intent. After the defense's presentation of evidence, defendant renewed his request for a judgment of acquittal, reiterating the same premises and adding the contention that Truss' wound was not the cause of his death. Similarly, after the jury's guilty verdict, defendant again moved for a judgment of acquittal, pursuant to Crim.R. 29(C), on the same grounds: the state failed to prove defendant acted purposely and the gunshot wound did not cause Truss' death.
In both the offense of aggravated murder and murder, the prosecution is required to prove beyond a reasonable doubt that defendant purposely caused the death of another. R.C. 2903.01; R.C. 2903.02. Purposely is defined in R.C. 2901.22(A):
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Purpose or intent can be established by circumstantial evidence,State v. Jenks (1991), 61 Ohio St.3d 259, and by the surrounding facts and circumstances in the case. Lott, supra. These circumstances include the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds are inflicted. State v. Robinson (1954), 161 Ohio St. 213;Busby, supra. The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. State v.Mackey (Dec. 9, 1999), Cuyahoga App. No. 75300, unreported, citingState v. Widner (1982), 69 Ohio St.2d 267 (finding purpose to kill in passenger's firing gun at individual from moving vehicle);State v. Dunlap (1995), 73 Ohio St.3d 308, 316.
Defendant argues that whoever shot Truss did not intend for him to die, as Truss was shot in his right leg, a "non-vital" area of the body, and that an inference of intent to kill should not be allowed simply because a gun was used. State v. Pleasant
(Apr. 17, 1996), Lawrence App. No. 94-CA-39, unreported. However, in Pleasant, the court twice noted that defendant testified he did not intend to kill the victim. He also testified that he only struck the victim once and that he did not think the wound was fatal. The evidence thus was sufficient to allow a jury to reasonably find that defendant did not intend to kill, but did intend to cause physical harm, rendering the trial court's instruction on the lesser included offense of involuntary manslaughter appropriate. By contrast, defendant here did not testify. Moreover, unlike Pleasant, where the defendant there used a club, defendant here fired a gun at Truss.
Defendant nonetheless contends Dr. Fardal's testimony supports a finding that the person who shot Truss acted "knowingly," but not purposely.[1] The coroner, Dr. Fardal, testified that the bullet entered Truss' right thigh with a slightly upward and back trajectory. In leaving Truss' right leg, the bullet injured his right femoral artery before going through his scrotum and eventually passing to his left side. Truss suffered extensive bleeding both externally and internally. Fardal testified that, given the injuries he saw, Truss would likely lose a third of his blood, enough to effect his brain within ten minutes of being shot. Fardal's final medical opinion was that Truss died due to a diffuse hypoxic brain injury, or the lack of oxygen to the brain, caused by the loss of blood as a result of the gunshot wound. Fardal, however, also testified that the wound was survivable, and in most circumstances the worst outcome would be the loss of a limb. In fact, Fardal testified that Truss should have survived the wound.
The medical evidence, coupled with the remaining evidence and construed in favor of the state, indicates that defendant told a bartender he was going to get his gun, go back to Urbancrest and get his drugs or his money. The day of the shooting, defendant went to the pawnshop where he had pawned a gun and bought it. He then went to Urbancrest, where Truss was struck with a bullet from a .38 special caliber revolver fired from no less than two to three feet away. The gun, introduced at trial, was identified by workers at the pawn shop as the one that defendant pawned and redeemed that day.
From that evidence, reasonable minds could reach different conclusions on whether the prosecution proved beyond a reasonable doubt that defendant acted purposely. "The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death." State v. Turner (Dec. 30, 1997), Franklin App. No. 97AP-709, unreported (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals) citing Robinson, supra,
paragraph five of the syllabus. "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." Id., quotingState v. Brown (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported; cf. State v. Smith (1993), 89 Ohio App.3d 497, 501
(finding that pointing gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). The evidence was sufficient to allow the jury here to infer that defendant acted with purpose or intent to kill. The issue was properly presented to the jury for consideration.
Defendant also contends the state presented insufficient evidence to prove beyond a reasonable doubt that defendant caused Truss' death. Defendant argues that Truss would have survived but for the grossly negligent medical treatment Truss received that day. In support, defendant cites the testimony of his expert witness, Dr. David DeHart, who testified that the treatment Truss received was gross maltreatment, even bordering on recklessness, and was the sole cause of Truss' death.
"It is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life. This rule has been qualified where there has been a gross or willful maltreatment of the patient by the medical personnel, which is shown to have been an independent intervening cause of the patient's death." State v. Johnson
(1978), 56 Ohio St.2d 35, 40 (citations omitted). Simple negligence is not enough. State v. Beaver (1997), 119 Ohio App.3d 385,394.
Contrary to DeHart's testimony, Fardal testified that Truss bled internally as well as externally, and that the main loss of blood came from an injury to the right femoral artery. While Fardal testified that people survive such a wound, he noted survival depends on a lot of factors, but primarily how much blood is lost. According to Fardal, without treatment Truss would have bled to death in twenty to thirty minutes, unless he stopped the bleeding on his own; after only ten minutes of bleeding, Truss would have suffered brain damage. Fardal then stated the cause of death: the gunshot wound that caused Truss to lose blood, which in turn caused oxygen deprivation.
A coroner is an expert witness who is permitted to give an opinion on matters within his scope of expertise. State v.Cousin (1982), 5 Ohio App.3d 32, limited by State ex rel. Blair v.Balraj (1994), 69 Ohio St.3d 310, 312. The testimony of a coroner that details the possible cause of death is sufficient evidence to sustain a homicide conviction. State v. Heinish (1990), 50 Ohio St.3d 231,235, citing State v. Manago (1974), 38 Ohio St.2d 223,227. Fardal's testimony was sufficient evidence to prove that defendant caused Truss' death.
Given DeHart's testimony, defendant nonetheless attacks the paramedic's using MAST trousers instead of applying direct pressure to Truss' wound, and contends the evidence supports reversal. Paramedic Perry testified he used the MAST trousers because Truss was no longer actively bleeding and Perry wanted Truss' remaining blood to be directed toward his heart and lungs. Had Truss been actively bleeding, he would not have used the MAST trousers.
As a result, despite the testimony of defendant's expert that the medical treatment Truss received was gross maltreatment and the cause of his death, the jury heard conflicting testimony from Perry, who testified that he felt the paramedics acted appropriately. Weight and credibility questions are primarily for the trier of fact. DeHass, supra, paragraph one of the syllabus. Viewing Perry's testimony in the light most favorable to the prosecution, the evidence is such that reasonable minds could reach different conclusions on whether the prosecution proved that Truss' death was caused by the gunshot wound, or whether the treatment that Truss received was so grossly negligent that it became an independent intervening cause of Truss' death. The trial court properly denied defendant's motions for acquittal. Defendant's fourth assignment of error is overruled.
Having overruled all of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN, P.J., concurs.
TYACK, J., dissents in part.
[1] A person acts knowingly when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).