CITY OF COLUMBUS, APPELLEE, *v.* FOREST, APPELLANT.

(No. 86AP-824 — Decided September 24, 1987.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, *David E. Tingley* and *Dennis P. Evans,* for appellee.

*William H. Truax,* for appellant.

STRAUSBAUGH, P.J. This is an appeal by defendant from a conviction for operating a motor vehicle while intoxicated in violation of Columbus City Code ("C.C.") 2133.01(b)(2). The conviction was entered following defendant's plea of no contest.

Defendant, Jon A. Forest, was arrested on February 20, 1986 on several traffic violation charges, but only his arrest and subsequent conviction pursuant to the operating a motor vehicle while intoxicated charge are germane to this appeal. Defendant's arrest for this offense followed a chase by city

police S.W.A.T. officers, who were driving an unmarked vehicle, after they observed defendant driving at an excessive rate of speed. During the chase, which concluded at defendant's home, the officers broadcast radio transmissions of these events. Apparently in response to these broadcasts, a third officer arrived at defendant's residence to assist the two S.W.A.T. officers. While being subdued, defendant asked his roommate to contact defendant's attorney.

During the slating process, defendant requested three or four times that he be allowed to speak with his attorney. At this time, defendant's attorney was at the jail and had requested the opportunity to speak with his client, although defendant was not so informed. Defendant initially refused to submit to a BAC test without first talking with his attorney, but eventually agreed to take the test. Defendant was then permitted to speak with his attorney.

Subsequently, on February 27, 1986, defendant's counsel made a request in writing of the city prosecutor that the recordings of telephone calls received by the sheriff's department and tapes of the radio transmissions received by the department regarding the chase on the night of February 20, 1986 be preserved. When the state failed to respond to defendant's request, a motion to preserve this evidence was filed, pursuant to Crim. R. 16(A), on April 2, 1986. When de-

fendant became aware that the broadcast tapes had been erased, apparently in accord with normal practice,[1] a motion to dismiss the action for failure to preserve the evidence was filed on April 3, 1986.[2]

Following a hearing on defendant's motions, the court overruled both motions. As to defendant's motion to preserve evidence, the court found the issue to be moot since the tapes had been recycled. The court overruled defendant's motion to dismiss for the reasons that defendant failed to establish the exculpatory value of the tapes and because defendant failed to timely move the court for an order directing the preservation of the broadcast recording.

Similarly, defendant's motion to suppress the BAC test results was also overruled. Defendant then entered his no contest plea. The court found defendant guilty of violating the city code and imposed a sentence of six months and a fine of $150.

Upon appeal, defendant asserts the following assignments of error:

"I. The trial court erred in overruling appellant's motion to dismiss for failure to preserve evidence as said failure deprived appellant of due process rights mandated by the Fourteenth Amendment of the Constitution of the United States of America.

"II. The trial court erred in overruling appellant's motion to suppress the results of the B.A.C. verifier as the B.A.C. verifier was not properly

---

[1] At the motion hearing, the testimony established that the Superintendent of Communications for the Columbus Department of Public Safety had a policy to retain tape recordings of police radio transmissions for thirty days and then, if no request to preserve the tapes had been made, to recycle the tapes. The superintendent testified that he had received no request from the state to preserve the tapes and the prosecuting attorney admitted that,

although he knew the procedure, he had no desire to preserve the tapes.

[2] Although defendant also requested recordings made by the sheriff's department of incoming telephone calls, apparently these calls are not recorded. Accordingly, the only evidence at issue here are the radio transmissions recorded by the city of Columbus.

adopted as an approved breath testing device.

"III. The trial court erred in overruling appellant's motion to suppress and motion *in limine* to suppress or rule *in limine* that the results of the B.A.C. verifier may not be introduced in evidence a [*sic*] same was obtained in violation of appellant's right to counsel under the Sixth Amendment and in violation of Ohio Revised Code Section 2935.29."

Defendant argues, by way of his first assigned error, that the prosecutor is under a constitutional duty to preserve evidence which is material to a defendant's case, regardless of whether the evidence is exculpatory. This duty attaches, defendant contends, when the state first takes possession of the evidence requested. The purpose of this duty, in defendant's view, is not merely to correct any unfair advantage, but is also to ensure that a fair trial is had. Defendant concludes that breach of the duty should result in dismissal of the charges.

Upon review of the relevant authorities, we believe that defendant misapprehends the nature of this case. The issue before us is not whether the prosecutor is under a constitutional duty to preserve evidence. Clearly, such a duty exists as to evidence, although destroyed in good faith and in accordance with normal procedure, which is apparently exculpatory and which cannot be obtained by other reasonable means. *California* v. *Trombetta* (1984), 467 U.S. 479. Moreover, the instant cause does not raise the issue presented in *Brady* v. *Maryland* (1963), 373 U.S. 83, and its progeny, despite defendant's reliance on that line of cases. *Brady* stands for the proposition that the state is under a constitutional duty, imposed by the due process requirements of the Fifth and Fourteenth Amendments, to disclose to criminal defendants exculpatory material held by the prosecution. Although these issues bear some similarity to the question before us, they are not identical. See, *e.g.*, *Trombetta, supra*, at 485-487.

Rather, we find that defendant's initial assignment of error posits with the court a unique and somewhat vexatious question, which few courts have previously addressed and which admits of few satisfactory answers. At issue are the constitutional duty of the state to respond to a criminal defendant's discovery requests and the remedies available upon breach of that duty.

We start by noting a few general principles relevant to the issue here. First, the right from which the state's corresponding duty flows, whatever that duty may be, is premised upon the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Due process guarantees fundamental fairness in the trial of a criminal defendant. *Lisenba* v. *California* (1941), 314 U.S. 219, 236. Although the guarantee of a fair trial does not mean an error-free or perfect trial, *United States* v. *Hasting* (1983), 461 U.S. 499, 508-509, due process does require the state to allow the accused to present a complete defense. *Trombetta, supra*, at 485.

Generally, the state guarantees the accused the right to present a complete defense when it affords him access to evidence. *Id.*, quoting *United States* v. *Valenzuela-Bernal* (1982), 458 U.S. 858, 867. The defense, however, does not enjoy an absolute right to all evidence which may be in the possession of the state. *United States* v. *Agurs* (1976), 427 U.S. 97. Rather, the right of a criminal defendant to have access to evidence extends only to that evidence which is material. *Brady, supra*, at 87.

Whether evidence is material de-

pends, to some extent, on the context in which a request for evidence is made. Where, for example, the defense seeks disclosure of evidence held by the state, the state must afford access to that evidence only where it is reasonably probable that the evidence would undermine confidence in the outcome of the trial. *United States* v. *Bagley* (1985), 473 U.S. 667. This standard applies irrespective of the prosecutor's good faith or bad faith in failing to disclose the evidence. *Brady, supra,* at 87. It is the character of the evidence which is crucial to the determination. *Agurs, supra,* at 110.

On the other hand, where the accused seeks to compel the state to preserve evidence, ostensibly for subsequent discovery, the evidence must be material in a different sense. Materiality, for purposes of analyzing the state's duty to preserve evidence, exists where the evidence requested is both apparently exculpatory and unique. *Trombetta, supra,* at 488-489. The court in *Trombetta,* however, specifically noted that this two-prong test obtains where the prosecution destroys evidence "in good faith and in accord with their normal practice." *Id.* at 488, quoting *Killian* v. *United States* (1961), 368 U.S. 231, 242.

Here, it is at least questionable, and probably quite likely, that the prosecution did not act in good faith. It is uncontroverted that the state failed to preserve the evidence despite defendant's specific request. Moreover, defendant's request was never answered.

The problem, of course, is whether the prosecutor's failure to respond deprived defendant of due process. Arguably, if the evidence was not exculpatory, then the state was under no duty to preserve the evidence, regardless of its moral culpability. Cf. *Agurs, supra,* at 110. On the other hand, if the tapes contained ex-

culpatory material, the state's failure to preserve the material infringed defendant's right to a fair trial by denying him access to that evidence. Unfortunately, "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of material whose contents are unknown and, very often, disputed." *Trombetta, supra,* at 486.

We find that fundamental fairness, implicit in the federal guarantee of due process, requires, at a minimum, that the state respond to defense requests to preserve evidence. We reach this finding for the reasons which follow.

*Trombetta, supra,* makes clear that the state's good faith or bad faith is an important factor to be considered by courts when reviewing preservation-of-evidence questions. *Id.* at 488. Equally clear, however, is the fact that the accused has a constitutionally protected right only to evidence which is apparently exculpatory. *Id.* at 489. As such, the state's good faith or bad faith in destroying evidence would be of little moment where the evidence has no exculpatory value. Cf. *Agurs, supra,* at 110. Accordingly, we believe that the court's reference in *Trombetta* to good faith relates to an independent requirement imposed by the Constitution in access-to-evidence cases. That is, the state is under a constitutional duty to respond in good faith to a defense request to preserve evidence.

Such a duty serves several important functions. First, the duty of the state to respond serves the overriding function of initiating the process in which the accused may assert his right to access material evidence. Absent such a duty, there would be little value in the constitutional right to have exculpatory evidence preserved. Additionally, it informs the accused as to whether the evidence exists or does not exist. Second, the state's response

will inform criminal defendants that the evidence has been destroyed or will be destroyed in accordance with normal practice. Finally, such a duty may well prevent the destruction of potentially exculpatory evidence, thereby averting the problem present in *Trombetta.*

It is equally important to note the extent of our holding. The right guaranteed and the duty imposed are limited specifically to a good faith response by the state to a proper defense request that evidence be preserved. This is not to say that the federal Constitution guarantees criminal defendants a right of pretrial discovery. *Agurs, supra,* at 107-111. Whatever rights the defense may enjoy as to *pretrial* discovery, or to the procedures by which those rights may be exercised, flow from state laws and rules which govern criminal procedure, and not from the federal Constitution. See *Weatherford* v. *Bursey* (1977), 429 U.S. 545, 559; see, also, *United States* v. *Augenblick* (1969), 393 U.S. 348, 355-356; *Trombetta, supra,* at 491-492 (O'Connor, J., concurring). Additionally, the state's duty to respond does not imply a right to have the evidence sought preserved. As we noted earlier, the right of an accused to have evidence preserved is limited by the Constitution to evidence which is apparently exculpatory and unique. *Trombetta, supra,* at 489.

Based on the foregoing, we believe the state breached its duty to respond to defendant's request to preserve the broadcast tapes. The remedy for such breach, however, does not mandate that the charge be dismissed.

Rather, we find that the two-part test established by the court in *Trombetta, supra,* satisfactorily protects defendant's right of access to exculpatory evidence. Normally, under the *Trombetta* standard, it is the accused who bears the burden of proof on both the exculpatory value of the evidence and that the evidence cannot be obtained by other reasonable methods. *Id.* at 489-490. Where, as here, the state breaches its duty to respond in good faith to a defense request to preserve evidence, we believe the appropriate remedy is to shift to the state the burden of proof as to the exculpatory value of the evidence. See 2 LaFave & Israel, Criminal Procedure (1984, Supp. 1987), Section 19.5, at 107, fn. 65.5.

We recognize that this burden-shifting remedy may impose upon the state a nearly impossible task in some cases. Just as few criminal defendants are able to prove the apparent exculpatory value of lost or destroyed evidence, so, too, will the state have a similar problem in attempting to prove the evidence was not exculpatory. Despite this concern, we do not believe the remedy is unduly harsh. Even if the prosecution fails, in every case, to carry its burden, the defense still must show that the evidence cannot be obtained via alternate channels. Moreover, we fail to ascertain why the state is unable to simply respond to a defense request to preserve evidence, even if such response merely informs the accused that the evidence will be destroyed in accordance with normal practice.

Here, however, even if the state could not prove that the tapes contained exculpatory material, defendant nonetheless has failed to show that this evidence could not be obtained by other methods. To the extent that the tapes may have shown that the arresting officers were incompetent to testify at his trial, pursuant to R.C. 4549.14, defendant was still free to discover the number of traffic arrests made by S.W.A.T. officers that night. Moreover, one of the officers was cross-examined by defendant at the motion hearing. Similarly, defendant's

claims that the S.W.A.T. officers were off-duty or were consuming alcohol while on duty could have been established via cross-examination, by witnesses' testimony or by police records. As such, despite the state's failure to respond to defendant's request to preserve the tapes, that failure did not prejudice defendant in the instant cause.

Based on the foregoing, defendant's first assignment of error is not well-taken and is overruled.[3]

In his second assignment of error, defendant contends that since the BAC verifier was adopted without the notice required by Ohio Adm. Code 3701-51-01, the results obtained from the test should be suppressed. We disagree.

Previously, this court has held that the requirement, under Ohio Adm. Code 3701-51-01, of publication of notice regarding the adoption of rules governing the validity of BAC verifiers was met when publication was had in the five newspapers cited by defendant. *Columbus* v. *Taylor* (May 7, 1987), No. 86AP-744, unreported, motion for leave to appeal granted (Oct. 7, 1987), No. 87-1151; *Columbus* v. *Oxley* (June 23, 1987), No. 87AP-153, unreported. That is, the Administrative Code requires publication in twelve *cities* and does not require publication in twelve newspapers.

Here, there is no evidence in the record which suggests that the five newspapers in which the notice was published are not newspapers of "general circulation" in the twelve cities as required by R.C. 7.12. Moreover, assuming *arguendo* for purposes of this appeal that the requirements of Ohio Adm. Code 3701-51-01 were not satisfied, suppression of the test results is simply not available. It is well-settled that there is no exclusionary rule for violations of state statutes, let alone for violations of the Administrative Code. See, *e.g.,* *Columbus* v. *Reid* (1986), 32 Ohio App. 3d 7, 513 N.E. 2d 351; *Taylor, supra,* at 11; see, also, *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 196-197, 55 O.O. 2d 447, 450-451, 271 N.E. 2d 245, 250. Rather, if the state in fact failed to properly adopt rules regarding the validity of the BAC verifier, the results obtained are no longer entitled to the presumption of validity accorded them by *State* v. *Vega* (1984), 12 Ohio St. 3d 185, 12 OBR 251, 465 N.E. 2d 1303. This does not mean that the results are either irrelevant or invalid, but merely that the state has a higher burden of proof.

Based on the foregoing, defendant's second assignment of error is not well-taken and is overruled.

Defendant asserts, in his final assignment of error, that because the BAC verifier test results were obtained in violation of his right to counsel, the results of the test should be excluded. The opinions rendered by this court in *Reid, supra,* at the syllabus, and *Taylor, supra,* at 10-11, are dispositive of this issue.

In those cases we held that neither the federal or the state Constitution, nor R.C. 2935.20, prohibits the introduction of BAC verifier results despite the absence of counsel when the test is performed. Accordingly, defendant's third assignment of error is overruled.

---

[3] We note in passing that defendant has pressed only an argument based on the Fourteenth Amendment. As such, we express no opinion as to what role Crim. R. 16 may play under similar circumstances. However, we cannot accept the state's position that defendant waived any rights he may have had regarding the preservation of evidence because he failed to file a motion, pursuant to Crim. R. 16(A), to compel discovery. See *Lakewood* v. *Papadelis* (1987), 32 Ohio St. 3d 1, 511 N.E. 2d 1138.

Defendant's three assignments of error are overruled. The judgment of the court below is affirmed.

*Judgment affirmed.*

BRYANT and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.