The STATE of Ohio, Appellee,

v.

GROCE, Appellant.

[Cite as *State v. Groce* (1991), 72 Ohio App.3d 399.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–664.

Decided Feb. 5, 1991.

*Michael Miller,* Prosecuting Attorney, and *Katherine J. Press,* for appellee.

*Vivyan, Graeff & Schumacher* and *David J. Graeff,* for appellant.

---

PEGGY BRYANT, Judge.

Defendant-appellant, William Groce, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of rape in violation of R.C. 2907.02, one count of attempted rape in violation of R.C. 2923.02, and one count of kidnapping in violation of R.C. 2905.01.

Defendant asserts the following as his sole assignment of error:

"Where material physical evidence is destroyed by law enforcement officials, the accused's Sixth and Fifth Amendment rights are violated, after it is determined that said material evidence could exclude the accused from the offenses alleged.

"The verdict was against the manifest weight of the evidence."

According to the victim, Jacqueline Watson, on the morning of May 19, 1988, she stopped off at the C & S Lounge for a beer on her way home from work. While at the bar, she met and conversed with defendant. They spent the next five to seven hours together, including two hours as partners in an ongoing card game at the club. Thereafter, Watson told defendant that she had business on the north end of the city and had to leave the game. Defendant offered her a ride in his vehicle, and she accepted. After completing her business, the two returned to the C & S for another beer.

Watson and defendant then left the C & S in defendant's vehicle and socialized with defendant's friends for the next couple of hours. Since Watson wanted to return to her home on East Livingston, defendant agreed to take her in his vehicle. Rather than heading to Watson's apartment, defendant took Watson to an apartment complex known as Cassidy Village. Watson became suspicious of the defendant, and rather than accompanying him into the complex, she walked to her grandmother's home nearby. At some point, Watson changed her mind, and returned to defendant in Cassidy Village apartments. She asked defendant for a ride home, but he did not respond.

As she turned to leave the apartment, defendant grabbed her and began forcibly removing her clothes. Defendant dragged Watson into his bedroom, raped her two times, and tried unsuccessfully to force her to perform oral sex. After the attack, defendant dropped Watson off near her grandmother's home and then drove away. Once inside her grandmother's home, Watson called the Rape Crisis Center, which notified the Columbus police.

While defendant admits meeting Watson at the C & S Lounge, spending at least two hours with her on the day in question, and giving her a ride in his automobile, he denies any sexual contact whatsoever with Watson. Rather, defendant claims that the victim "made up these lies" about him in order to get back at him because he refused her offer of sex for money.

█ In his assignment of error, defendant contends that the state's failure to preserve exculpatory material evidence denied him his due process rights to a fair trial. Specifically, following the incident and at the direction of Columbus police, vaginal swabs and slides were taken from the victim at Saint Anthony Hospital to determine if she had had recent sexual contact. On September 9, 1988, the slides and swabs were disposed of by order of Police Detective Tom Fisher. Not until over two years later, when the defendant voluntarily submitted to blood tests for DNA testing and comparison to the slides, did the parties learn the slides had been destroyed. Because DNA testing can be used to completely exonerate a particular suspect, the defendant contends that the destruction of the slides and swabs deprived him of a fair trial.

In response, the state relies on the United States Supreme Court decision in *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. Although defendant attempts to distinguish *Youngblood,* we find the case controlling herein.

In *Youngblood, supra,* the police failed to refrigerate clothing worn by the victim of an alleged sexual assault, which later prevented the use of DNA testing procedures. The Supreme Court held that the failure to preserve the potentially useful evidence did not constitute a denial of due process of law:

"The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. *We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.*" (Emphasis added.) *Id.* at 57–58, 109

S.Ct. at 337, 102 L.Ed.2d at 289.   See, also, *State v. Walker* (Aug. 30, 1990), Franklin App. No. 90AP–34, unreported, 1990 WL 126294.

The record contains no evidence of bad faith on the part of the state in failing to preserve the swabs and slides; nor does the record reflect evidence suggesting that the police intentionally circumvented the disclosure requirements set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.   To the contrary, Officer Fisher testified that the destruction of the evidence was " * * * an error on my part.   * * * [T]o the best of my recollection, I had received a bunch of property disposition slips on that date, and in filling out those disposition slips I had inadvertently marked this item for destruction."

We further note that the record contains additional testimony corroborating various portions of Watson's testimony, including her hysteria following the incident.   By contrast, the record does not corroborate defendant's testimony. Even Watson's alleged statement that she was going to "get back" at defendant fails to support him: Watson's vengeance may have arisen from defendant's raping her, as the record contains no evidence of any other reason for her desire to "get back" at him.

Finally, although defendant asserts that the destroyed evidence would have exonerated him, nothing in the record suggests that the slides would not as likely incriminate defendant as exonerate him.

Nevertheless, defendant points to this court's decision in *Columbus v. Forest* (1987), 36 Ohio App.3d 169, 175, 522 N.E.2d 52, 58, where, faced with evidence destroyed in accordance with normal practice, we stated:

"Where, as here, the state breaches its duty to respond in *good faith* to a defense request to preserve evidence, we believe the appropriate remedy is to shift to the state the burden of proof as to the exculpatory value of the evidence.   * * * Even if the prosecution fails * * * to carry its burden, the defense still must show that the evidence cannot be obtained via alternate channels."   (Emphasis added.)

Defendant argues that *Forest* mandates the imposition of this burden-shifting remedy in the instant case, thus requiring the state to prove that the DNA testing would not have exculpated defendant.   We disagree.   The burden-shifting remedy of *Forest* has limited application, and was applied in *Forest* where the state failed to respond in good faith to a defendant's request to preserve evidence.   The record herein contains nothing suggesting defendant requested the state to preserve the slides at issue.

In the final analysis, absent the showing of bad faith, the state's failure to preserve the slides at issue is not a denial of due process of law.

Defendant also asserts that the judgment of the trial court was against the manifest weight of the evidence. The test for determining the sufficiency of evidence is whether "reasonable minds can reach different conclusions on the issue of whether defendant is guilty beyond a reasonable doubt." *State v. Black* (1978), 54 Ohio St.2d 304, 308, 8 O.O.3d 296, 298, 376 N.E.2d 948, 951. Further, in reviewing a case to determine whether the verdict is against the manifest weight of the evidence, we reverse the judgment of the trier fact only where reasonable minds could not fail to find reasonable doubt. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548, paragraph five of the syllabus. In each instance, the weight given to the evidence regarding credibility of witnesses is a matter primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Applying the foregoing parameters to the evidence before us, we find the judgment of the trial court to be properly supported by the evidence. The victim's testimony alone, if believed, supports each element of the state's prima facie case.

While defendant's testimony contradicted Watson's, the jury apparently chose to believe Watson and not defendant. Nor can we say the jury's verdict is unreasonable on the evidence presented. The victim's testimony that she was forcibly raped by defendant is corroborated in part by the testimony of her grandmother's next door neighbor, John Darling, who testified that, after Watson was dropped off at her grandmother's house, she was "very hysterical, she was you know, she was really hysterical." On the other hand, the testimony of the defendant was impeached on a number of occasions. Specifically, defendant admitted that he lied to police when he was stopped for questioning shortly after the incident. In addition, the defendant denied ever living in the Cassidy Village apartments, yet the state produced evidence that an automobile was registered to the defendant at a Cassidy Village address. The jury's verdict is supported by the record.

Accordingly, defendant's single assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and GRIGSBY, JJ., concur.

JOSEPH B. GRIGSBY, J., of the Union County Court of Common Pleas, sitting by assignment.