OPINION
Defendant-appellant Roger Gillespie appeals from an order of the trial court overruling Gillespie's motion for an order holding the State in contempt. Gillespie contends that the trial court erred by not ordering his discharge. We conclude that the trial court properly construed Gillespie's motion as a motion to hold the State in contempt for violating an order to preserve evidence, and that the trial court properly concluded that it was not proven that the State had violated the order. Accordingly, the judgment of the trial court overruling the motion to hold the State in contempt is Affirmed.
 I
The relevant facts are succinctly set forth by the trial court in its order from which this appeal is taken, as follows:
 The Defendant, Roger Dean Gillespie, was tried on nine counts of Rape, three counts of Kidnaping, three counts of Aggravated Robbery, and three counts of Gross Sexual Imposition in February of 1991, and convicted on all except two Robbery counts. However, after the trial, new evidence was discovered consisting of Caucasian pubic and head hairs upon the outer clothing of two of the victims. This discovery led to a new trial in June of 1991. Microscopic tests were performed on the hairs and it was determined that, of the seven hairs accounted for, the pubic hair belonged to a victim, two of the head hairs belonged to a victim, two of the head hairs had similarities to the victim's hair, and that two of the head hairs were neither the victim's nor the Defendant's. None of the hairs belonged to the Defendant. Although DNA testing was available at the time, no DNA tests were performed on the hairs. The jury, aware that the newly found hairs were not those of the Defendant, found the Defendant guilty of all the remaining counts. Since the time of the trial the hair samples have been in the possession of the jury, the Court, the Court of Appeals, the State, the Defendant's experts, the Defendant's Counsel, The Miami Valley Crime Laboratory, and the Clerk of Courts.
 In a Decision filed September 17, 1999 this Court granted Defendant's Motion for the Release of the Hair Samples that was filed on March 31, 1998. The Court did this so that the samples could be compared with the DNA records of the FBI on the extremely unlikely chance that one of the hairs might match some other person who might be considered a suspect. In order to effectuate that Decision, Orders to View and Orders to Transport Exhibits were issued on February 29, March 3, March 27 and July 28, 2000.
 When representatives of Gillespie and the State, in the presence of each other, opened the sealed envelopes containing these exhibits, it was found that one or two of the hairs were missing. Gillespie then filed a "Motion for Evidentiary Hearing," the entire text of which is as follows:
 Now comes the Defendant, ROGER DEAN GILLESPIE, by and through his attorneys, RION, RION AND RION, L.P.A., INC., and herein moves this Court for an evidentiary hearing requiring the State of Ohio and the Clerk of Courts for the Montgomery County Court of Common Pleas to address their failure to turn over to the defense hair samples that may exonerate the Defendant [in] the above captioned matter.
(Emphasis in original.)
The trial court held an evidentiary hearing on Gillespie's motion on March 9, 2001. Following this hearing, Gillespie filed a memorandum, which he entitled "Memorandum in Support of Defendant's Motion to Produce Evidence and Defendant's Motion for New Trial."
In its decision from which this appeal is taken, the trial court first dealt with the proper characterization of Gillespie's motion, as follows:
 This matter is before the Court upon a motion styled by the Defendant as a Motion for Evidentiary Hearing and filed on January 19, 2001. Because the text of the motion states, ". . . it is requested that the Clerk of Courts and the Montgomery County Prosecuting Attorney's Office answer their failure to comply with this Court Order . . ." the Court has chosen to treat this as a Motion to Show Cause for the purpose of determining whether the State is in Contempt of this Court's previous Orders. The State also has treated the motion as such.
 In denying Gillespie's motion, the trial court reasoned as follows:
 The burden of proving that a Court Order has been violated is upon the Defendant/Movant. At the Court's discretion it may treat a contempt allegation as a civil or a criminal matter. The Court has treated this motion as a civil contempt which requires the Defendant/Movant to prove contempt by clear and convincing evidence. Brown v. Executive 200, Inc., 64 Ohio St.2d 250 (1980).
 At the hearing it was either stipulated, or the evidence established, a chain of custody of the hairs which included the numerous individuals or agencies noted above. It is uncontroverted that the State turned over to the Defendant's experts, State's Exhibit 7 which, it was believed, contained all of the hairs at issue. When State's Exhibit 7 was received for testing by Defendant's experts, one or two of the hairs were missing that were present at the time microscopic tests were completed in 1991. It was not established by evidence as to which of the hairs were missing, when the hair disappeared, who was in control of the hair at the time it disappeared, and whether, at the time of the Court's Orders from February 29 to July 28, 2000, if the hairs existed within the State's Exhibits so as to properly be subject to the Orders.
 The Court's decision of September 17, 1999 "permitted" the examination of the hairs, but made no Order as the Court wanted to give the State a chance to work out the logistics of the examination. Therefore, the State cannot be held in contempt as a result of that Decision.
 The logistics included an Order to View Exhibits filed February 29, 2000. At the March 9, 2001 hearing, the evidence presented indicated that this was accomplished. There was no evidence to the contrary.
 There was an Order to Transport Exhibits filed March 3, 2000 but, again, the evidence indicated that this was done with no evidence presented that the Order was violated.
 An Order to Transport was issued March 27, 2000 which, again, pursuant to uncontroverted evidence, was fulfilled.
 Finally, the Court's Order to Transport of July 28, 2000 required the transport of "lab number 00-003057 containing State's Exhibit 7." From the evidence introduced at hearing this was, in fact, also done.
 There was no evidence presented that any of the Court's Orders had been violated by the State or anybody else because the Court ordered the transportation of specific exhibits, not specific hairs, and the Orders were diligently obeyed. Nobody expected that some hairs may be missing, and there was nothing proven to warrant the arousal of any suspicion as was alleged by Defendant/Movant. Because so many individuals have handled the exhibit, including Defendant's experts and Defendant's Counsel, the disappearance of the hairs will never be resolved.
 Denise Rankin, of the Miami Valley Regional Crime Lab, testified that the nature of trace evidence is such that it can disappear without anybody even noticing, and she said "It's possible that every time those items are open, something is lost." As if to prove that point, Defense Counsel had Exhibit 7 opened at the hearing and proceeded to drop it to the floor shattering the microscope slides containing some of the remaining hairs thereby destroying the integrity of the exhibit., Defendant/Movant having failed to prove contempt of this Court's Order by clear and convincing evidence, the Motion is hereby OVERRULED.
From this order of the trial court, Gillespie appeals.
 II
Gillespie's sole assignment of error is as follows:
 BECAUSE THE STATE CANNOT SHOW THAT THE MISSING HAIRS WERE NOT EXCULPATORY EVIDENCE, AND BECAUSE HAIRS ENDED UP MISSING WHILE THEY WERE UNDER STATE CONTROL, DUE PROCESS REQUIRES THAT THE DECISION OF THE LOWER COURT BE REVERSED AND THAT THE CONVICTIONS BE ORDERED DISMISSED.
 We note that Gillespie's initial motion was properly treated by the trial court as a motion for an order for the State to show cause why it should not be held in contempt for violating previous orders of the trial court relating to the preservation of evidence. Following a hearing on this motion, in his post-hearing memorandum, Gillespie characterized his motion as a motion for a new trial. Now, on appeal, he characterizes the relief he is seeking as the dismissal of his 1991 convictions.
In our view, the trial court appropriately treated Gillespie's motion as a motion for an order to the State to show cause why it should not be held in contempt. An evidentiary hearing was held on that motion.
Following Gillespie's second trial, in 1991, he was convicted and sentenced. That conviction and sentence was affirmed by this Court inState v. Gillespie (January 21, 1993), Montgomery App. Nos. 12941, 13585, unreported. There is no record of any further proceedings. We conclude, then, that Gillespie's conviction and sentence became final following our affirmance of that conviction and sentence in early 1993.The record reflects that Gillespie filed his first motion to preserve the hair evidence on June 24, 1996, and two orders to preserve the evidence were entered on June 26, 1996.
The fact that two of the human head hairs were missing was discovered, for the first time, when Denise Rankin, of the Miami Valley Regional Crime Laboratory, opened, re-inventoried, and re-sealed State's Exhibit 7, in preparation for sending the hair evidence to a laboratory in Texas for DNA analysis at Gillespie's expense. This was in April of 2000. As the trial court notes in its decision, it is impossible to determine whether these hairs were missing before the 1996 order to preserve evidence, or whether they were lost after that order. We agree with the State and the trial court that there was a failure of proof, by clear and convincing evidence, that the State violated the trial court's orders to preserve the evidence. We agree with the trial court that it is unlikely that anyone will ever know when these two hairs were lost. If they were lost after Gillespie's conviction became final in 1993, but before the 1996 order to preserve evidence, we do not see how the State could be deemed to have been in contempt of the trial court's order. We do not understand the State to have a duty to preserve evidence, indefinitely, once a conviction has become final and all appeals have been exhausted.
Gillespie cites California v. Trombetta (1984), 467 U.S. 479,104 S.Ct. 2528, and Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333, for the proposition "that a defendant may not be convicted of a crime when the state fails to preserve materially exculpatory evidence." In each of those cases, the claim was that the state had failed to preserve material exculpatory evidence before trial. We do not read into either opinion a requirement that the state indefinitely preserve evidence in every criminal case after a conviction has become final. Likewise, in all of the Ohio cases Gillespie cites, potentially exculpatory evidence was lost, or was not preserved, before trial. Statev. Treesh (2001), 90 Ohio St.3d 460; Columbus v. Forest (1987),36 Ohio App.3d 169; and State v. Benton (2000), 136 Ohio App.3d 801.
In the absence of any evidence that the State, after Gillespie's conviction and sentence had become final, being aware of the existence of exculpatory evidence, acted in bad faith in a manner causing the loss of that evidence, we conclude that there has been no due process violation. To hold otherwise would impose upon the State an unreasonable burden to preserve evidence indefinitely in every case in which a criminal conviction has become final.
Gillespie's sole assignment of error is overruled.
 III
Gillespie's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.