DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Ottawa County Court of Common Pleas which, following a trial to the court, found appellant, Joel Cal, guilty of felonious assault of a police officer, a felony of the first degree, in violation of R.C. 2903.11(A)(1), and aggravated menacing, a misdemeanor of the first degree, in violation of R.C. 2903.21(A). Appellant was sentenced to 9 years imprisonment as to the felonious assault, and 180 days concurrently on the aggravated menacing conviction. For the reasons that follow, we affirm the decision of the trial court.
{¶ 2} On appeal, appellant raises the following assignments of error:
{¶ 3} "First Assignment of Error
{¶ 4} "The trial court's verdict finding defendant-appellant guilty of felonious assault is against the manifest weight of the evidence and sufficiency of the evidence and violates defendant-appellant's rights under the Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
{¶ 5} "Second Assignment of Error
{¶ 6} "The state violated defendant-appellant's right to due process under the United States and the Ohio Constitutions when it destroyed evidence favorable to the defense that was material to the issue of guilt."
{¶ 7} On December 24, 2002, Officer Charles DeVore was transporting appellant in the front passenger seat of his 1996 Ford Crown Victoria police cruiser because DeVore's canine partner was being transported in the backseat area of the vehicle. Appellant was handcuffed behind his back during transport and was buckled in with a lap and shoulder harness seatbelt. DeVore testified that appellant was belligerent and was threatening to kill him. Appellant asked DeVore several times if he could get comfortable. DeVore eventually responded, "I don't care." According to DeVore, he sensed movement by appellant and DeVore's coffee cup fell, hitting DeVore in the leg. Appellant then apologized and stated, "You said I can get comfortable." DeVore's hand and the vehicle's gear shift were then struck by, what DeVore believed to be, appellant's foot. DeVore lost control of the vehicle and collided with a cement culvert and three signs, including a stop sign.
{¶ 8} DeVore went to the hospital immediately following the accident. He complained of lower back pain. He was x-rayed and prescribed Darvocet for his pain. DeVore followed up with his family physician, Dr. Steve Jackson, on December 26, 2002. Dr. Jackson treated DeVore for radiculopathy, a problem with the back, related to nerve injury, with radiation of the pain into the leg. Dr. Jackson treated DeVore with steroids, "an anti-inflammatory modality," and brought him back on January 9, 2003 to recheck him. DeVore's pain continued and Dr. Jackson referred DeVore for magnetic resonance imaging ("M.R.I.").
{¶ 9} The M.R.I., taken on January 17, 2003, showed that DeVore suffered from spondylolisthesis, a "condition where one vertebra actually slides forward over the top of another vertebra," and possibly a herniated disc. DeVore was sent to Dr. Bo Yoo, a neurosurgeon, for treatment. Dr. Yoo took flexion-extension x-rays of the lumbar spine and concluded that DeVore did not have a herniated disc, but did suffer from spondylolisthesis and degenerative disc disease. For Workers' Compensation, DeVore subsequently saw another neurosurgeon at the Cleveland Clinic and one in Toledo with the same results.
{¶ 10} In terms of a Workers' Compensation claim, Dr. Jackson opined, within a reasonable degree of medical certainty, that DeVore could no longer work as a police officer, and stated:
{¶ 11} "My opinion at that point was with the pain that he had complained of, which is a subjective symptom, coupled with the objective findings that were found on the M.R.I., as well as his physical exam, that he was not capable of doing, I guess what was referred to me as the typical police sort of work that would potentially be to wrestle an individual or to do relatively vigorous activity. * * *.
{¶ 12} "I know I rendered that opinion multiple times. I initially indicated that I did not feel he was capable, and immediately after this episode, and I guess it would be December of 2002, that pretty much has continued to be my opinion from the perspective, I do not feel he was capable to returning to that type of work."
{¶ 13} Dr. Jackson testified that the degenerative disc disease would not have been caused by an acute accident, but testified that he could not conclude whether the spondylolisthesis existed as a result of the accident without having an earlier M.R.I. to examine. Dr. Jackson stated:
{¶ 14} "The spondylolisthesis is felt — it was felt by myself as well as at least two of the neurosurgeons that saw him as the reason why he had back pain. The spondylolisthesis, which the other attorney pointed out, we argued whether or not that could have been a congenital problem. Congenital implies you are born with a propensity of having one vertebra slide forward over the top of the other vertebra.
{¶ 15} "That, in essence, is a weak spot. If that individual is involved in an injury, that person is going to take longer than a normal person who does not possess spondylolisthesis to improve. So I can't explain when the spondylolisthesis occurred, if it was truly congenital or if it was acquired at the accident cause, I have no way of knowing that unless we had an M.R.I. previous to this and we don't."
{¶ 16} Dr. Jackson further testified that the last time he saw DeVore before the accident, in February 2002, DeVore was asymptomatic of back problems. After the crash, however, it was Dr. Jackson's medical opinion to a reasonable degree of medical certainty that DeVore could no longer undertake the physical rigors of being a police officer.
{¶ 17} DeVore also testified that prior to the December 24, 2002 accident, he "had no problems" with his back. He could shovel snow, work in the yard, and do physical activities. After the accident, he suffered from pain in his lower back that radiated down his leg and he could no longer shovel snow. He testified that he was off work for approximately two weeks following the accident and only returned to work on light duty for a couple of months until his doctor determined that he would "never go back" to his regular duties as a police officer.
{¶ 18} Appellant argues as to his first assignment of error that his conviction for felonious assault was based on insufficient evidence and was against the manifest weight of the evidence because the state did not prove beyond a reasonable doubt that (1) the automobile accidence caused the officer's back condition, and (2) there was serious physical harm. In particular, appellant argues that the medical evidence presented indicates that DeVore's back pain was caused either by degenerative disc disease, which Dr. Jackson testified was not caused by an acute accident, or spondylolisthesis, which could not be established within a reasonable degree of medical certainty to have been caused by the accident.
{¶ 19} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
{¶ 20} Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins at 387. The appellate court,
{¶ 21} "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
{¶ 22} Pursuant to R.C. 2903.11(A)(1), any person who knowingly causes "serious physical harm" to a peace officer is guilty of felonious assault, a felony of the first degree. R.C.2901.01(A)(5) defines "serious physical harm to persons" as follows:
{¶ 23} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
{¶ 24} "(b) Any physical harm that carries a substantial risk of death;
{¶ 25} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
{¶ 26} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
{¶ 27} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
{¶ 28} We find that the evidence presented at trial was sufficient to establish that appellant knowingly caused DeVore serious physical harm. Appellant threatened DeVore with bodily harm and then struck DeVore's hand and the gear shift in such a manner to cause DeVore to lose control of the vehicle. Appellant argues that DeVore was exceeding the speed limit on a dangerous, wet curve, but we find that the evidence does not establish that the pavement was moist or that the curve in the road was severe.
{¶ 29} Although Dr. Jackson could not state within a reasonable degree of medical certainty that DeVore's spondylolisthesis was caused by the accident, we nevertheless find that the injury suffered by DeVore was sufficient to establish "serious physical harm" as defined by R.C. 2901.01(A)(5). DeVore was asymptomatic of back pain, prior to the December 24, 2002 accident that was caused by appellant, and was capable of performing his duties as a police officer and conducting the physical aspects required of his lawn and snow removal business. Immediately following his accident, DeVore suffered pain in his back and leg, had to take two weeks leave from his duties as a police officer, underwent steroid therapy, continued further treatment with his family physician and neurosurgeons, was unable to shovel snow, and ultimately, was found by Dr. Jackson to be permanently incapable of conducting his duties as a police officer.
{¶ 30} As the trial court aptly noted, "you take your victims as you find them. If he had a weak back and a propensity to injure, that is not his fault, and the defendant is stuck with the consequences of his act." Regardless of whether the spondylolisthesis could specifically be attributed to the accident, we find that the state established beyond a reasonable doubt that the pain suffered by DeVore following the accident caused him to be permanently incapacitated and/or that the physical harm caused by the accident involved "acute pain of such duration as to result in substantial suffering" or "prolonged or intractable pain." See R.C. 2901.01(A)(5)(c) and (e).
{¶ 31} Appellant additionally argues that the evidence was against the manifest weight of the evidence because there was evidence that DeVore suffered from a prior back injury. According to DeVore and Dr. Jackson, DeVore suffered a back strain as a result of stepping in a hole in August 2001. DeVore never lost any time from work as a result of that injury and, after two rounds of physical therapy, was released from care in February 2002. Dr. Jackson testified that DeVore was under no restrictions as a result of his 2001 back strain and was asymptomatic of back pain in February 2002. DeVore also testified that following physical therapy, and prior to the December 24, 2002 accident, he "had no problems" with his back. Based on the foregoing, we find that the trial court did not lose its way in determining that the state had proven the elements of felonious assault beyond a reasonable doubt.
{¶ 32} Based on the foregoing, we find that there was sufficient evidence to sustain appellant's conviction of felonious assault and that the verdict was not against the manifest weight of the evidence. Appellant's first assignment of error is therefore found not well-taken.
{¶ 33} Appellant argues in his second assignment of error that the state violated his right to due process by destroying evidence favorable to the defense that was material to the issue of guilt. Appellant requested that the state produce the 1996 Ford Crown Victoria for inspection of the transmission and to demonstrate that appellant could not have maneuvered himself in the front seat and over the radio console as alleged.
{¶ 34} It is well established that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted of a crime where the state either fails to preserve materially exculpatory evidence, California v. Trombetta (1984), 467 U.S. 479, 489, or destroys in bad faith potentially useful evidence, Arizona v.Youngblood (1988), 488 U.S. 51, 58. Evidence is materially exculpatory where: (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means.Trombetta, 467 U.S. at 489. "[W]here a defendant moves to have evidence preserved and that evidence is nonetheless destroyed by the state in accordance with its normal procedures, the appropriate remedy is to shift the burden to the state to show that the evidence was not exculpatory." State v. Benton (2000),136 Ohio App.3d 801, 805, citing, Columbus v. Forest (1987),36 Ohio App.3d 169, 173. If the state fails to carry this burden, appellant must still show that the evidence could not have been obtained by other reasonable means. Id. at 806.
{¶ 35} We find that appellant's constitutional rights were not violated. Contrary to appellant's assertion, DeVore never indicated that appellant kicked the gear shift into park, thereby causing the accident. Rather, DeVore's account of the accident was consistently throughout the record that appellant struck DeVore's hand and gear shift, causing him to swerve left of center and then lose control of the vehicle. As such, we find that no exculpatory evidence could have been discovered through examination of the transmission.
{¶ 36} Appellant, however, also asserts that by providing the original accident vehicle, he could have demonstrated to the trier of fact that he was incapable of maneuvering in the passenger seat of the vehicle in the manner he was accused. On October 5, 2004, the trial court held a hearing on appellant's request to have the vehicle produced at trial. It was determined that the radio console had been removed from the accident vehicle. As such, the trial court ordered that another 1996 Ford Crown Victoria, with the radio equipment and console in place, be provided for trial. Thereafter, on October 6, 2004, the state permitted the accident vehicle to be destroyed.
{¶ 37} At trial, the state produced a vehicle, as ordered by the trial court, and appellant was permitted to sit in the front passenger seat for demonstration purposes. We find that the replacement vehicle was an appropriate substitute for the original vehicle which had been altered since the time of the accident. Accordingly, we find that appellant failed to establish that the destroyed vehicle was of such a nature that he was unable to obtain comparable evidence by other reasonable means. See Trombetta, 467 U.S. at 489. We therefore find that appellant's constitutional rights were not violated.
{¶ 38} Based on the foregoing, we find that appellant's second assignment of error is not well-taken.
{¶ 39} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
M. Handwork, J., Pietrykowski, J., Parish, J., concur.