[Cite as *State v. Olding*, 2010-Ohio-4171.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 17-09-13

    v.

ROBERT A. OLDING,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Shelby County Common Pleas Court
Trial Court No. 08CR000314

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: September 7, 2010

APPEARANCES:

    *Konrad Kuczak* for Appellant

    *Jeffrey J. Beigel* for Appellee

Case No. 17-09-13

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Robert A. Olding ("Olding") brings this appeal from the judgment of the Court of Common Pleas of Shelby County finding him guilty of one count of illegal conveyance of weapons or prohibited items onto the grounds of a detention facility in violation of R.C. 2921.36(A)(2), a third degree felony and sentencing him to two years in prison. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On October 18, 2009, Shelby County Deputy Sheriff, Sergeant Brad Pleiman ("Pleiman") observed a vehicle approaching with its headlights going off and on. As the car passed, Pleiman noticed that the vehicle lacked a rear license plate. Pleiman then followed the vehicle and observed it turn into the Phoenix Bar parking lot and proceed to park at the far end of the parking area, away from all other vehicles. Pleiman pulled into the parking lot and then activated his overhead lights and spot light. He observed a female, later identified as Giavanna Peredo ("Peredo"), walking away from the passenger side of the vehicle. A male, later identified as Olding, was next to driver's side of the vehicle and walking away. Pleiman instructed both Olding and Peredo to return to the vehicle. Olding returned to the car and Pleiman told him to keep his hands out of his pockets. Pleiman then called Peredo back to the patrol car to "get her side of the story" concerning the flickering lights and missing license plate.

{¶3} While Pleiman was questioning Peredo, Olding began yelling and cursing at Pleiman for questioning Peredo rather than Olding while throwing his arms around. Pleiman called for backup due to Olding's erratic behavior. Peredo explained that she and Olding had been having an argument which might explain his angry behavior. Olding kept interrupting the discussion. Olding then walked around to the rear of his vehicle and sat on the trunk. When Pleiman told him to get off, he got down, and started to reach into his pants pocket. Pleiman told him to remove his hand from the pocket. Pleiman then observed Olding remove a white object and put it behind his back at the waistband. When Olding's hand was visible again, it was empty. Pleiman then instructed Olding to lie on the ground with his hands out to the side and away from his body. Olding complied at first, then moved his hands close to his body and refused to move them.

{¶4} Upon the arrival of backup, it was decided to handcuff Olding due to his anger and reported prior incidents between the police and Olding. Olding was not under arrest at this point. A quick pat down search was performed by Deputy Howell ("Howell") while Olding was on the ground. After handcuffing him, Howell stood him up and performed a more thorough pat down search. In Olding's coat, a sock containing two clear bags of white powder wrapped in tissue paper was found. Believing the substance to be cocaine, Olding was placed under arrest and taken to the Shelby County Jail to be booked. During the booking

process, another bag of suspected cocaine was either dropped or fell from Olding's pants.

{¶5} On November 13, 2008, Olding was indicted for one count of possession of drugs, in violation of R.C. 2925.11, one count of trafficking in drugs, in violation of R.C. 2925.03(A)(2), and one count of illegal conveyance of drugs onto the grounds of a detention facility, in violation of R.C. 2921.36(A)(2). Olding entered a plea of not guilty on November 21, 2008. On December 8, 2008, Olding filed a motion to suppress evidence and to dismiss the charges. A hearing was held on the motion to suppress on March 3, 2009. A hearing was held on the motion to dismiss on March 14, 2009. On April 13, 2009, the trial court denied both the motion to suppress and the motion to dismiss the charges.

{¶6} On April 14, 2009, Olding entered into a plea agreement with the State. Olding agreed to plead no contest to the third count of the indictment, illegal conveyance of prohibited items onto the grounds of a detention facility, and the State agreed to dismiss counts one and two and the specification associated with count three. The trial court accepted the plea and found Olding guilty of count three. The trial court then sentenced Olding to serve two years in prison. Olding appeals from these judgments and raises the following assignments of error.

**First Assignment of Error**

**The trial court committed prejudicial error by overruling [Olding's] motion to suppress evidence.**

**Second Assignment of Error**

**The trial court committed prejudicial error overruling [Olding's] motion to dismiss count III or in the alternative motion to suppress evidence.**

**Third Assignment of Error**

**The trial court committed prejudicial error by finding [Olding] guilty when he was involuntarily of (sic) the premises of the detention facility.**

{¶7} The assignments of order will be addressed out of order.

{¶8} Olding alleges in his second assignment of error that the trial court erred in denying the motion to either suppress evidence of the bag of cocaine found at the Shelby County Jail or to dismiss the third count of the indictment.

> **Typically, the burden of proving that lost or destroyed evidence is materially exculpatory and that the evidence cannot be obtained by other reasonable methods is placed on the defendant. * * * However, when a defendant requests evidence and the State fails to respond in good faith to such a request, the State then bears "the burden of proof as to the exculpatory value of the evidence." [*City of Columbus v. Forest*] (1987), 36 Ohio App.3d at 173, 522 N.E.2d 52.**

*State v. Cahill*, 3d Dist. No. 17-01-19, 2002-Ohio-4459, ¶14.

{¶9} Olding had requested a copy of the video generated during his intake at the jail. However, the video was destroyed before it could be turned

over to Olding. The trial court made a finding of fact that the State destroyed the recording in bad faith and thus had the burden of demonstrating that the video did not contain exculpatory material. Here, the trial court relied upon Defendant's Exhibit E, which included portions of Pleiman and Howell's reports. Both of these reports indicated that a bag of a substance resembling cocaine fell from Olding as he was walking in the jail. This court agrees with Olding that the video would not have shown that the content of the bag was cocaine. However, contrary to Olding's argument, the video also would not have shown that the content of the bag was not cocaine either. The fact that the video may not be inculpatory as to the content of the bag does not automatically make it exculpatory. Thus, this court does not find that the trial court erred in finding that the video was not exculpatory. The second assignment of error is overruled.

{¶10} Olding claims in the first assignment of error that the pat down search was not permitted and that the removal of the contraband was not supported by the "plain feel" doctrine.

> **Under [*Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889], a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *." Id. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. Justice Harlan's concurring opinion in *Terry* emphasizes that "the right to frisk must be immediate and automatic" where the lawfully stopped detainee is under suspicion for a crime of violence. Id. at 33, 88 S.Ct. at**

**1886, 20 L.Ed.2d at 913. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus.**

**A [*Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331] order does not automatically bestow upon the police officer the authority to conduct a pat-down search for weapons. In analyzing the ensuing *Terry* frisk, the question we must ask is whether, based on the totality of the circumstances, the officers had a reasonable, objective basis for frisking defendant after ordering him out of the car. See *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Mimms*, supra, 434 U.S. at 108-109, 98 S.Ct. at 332, 54 L.Ed.2d at 335, quoting *Terry*, supra, 392 U.S. at 19, 88 S.Ct. at 1878-1879, 20 L.Ed.2d at 904.**

*State v. Evans* (1993), 67 Ohio St.3d 405, 408-409, 618 N.E.2d 162. If during the

frisk an officer detects contraband, the items may be lawfully seized. *Minnesota*

*v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334.

**The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment - or at least no search independent of the initial intrusion that gave the officers their vantage point. * * * The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to**

> **a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. * * * The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.**

Id. at 375-76. Although contraband found during a *Terry* search may be seized, there are limits on the search. Id. at 376. The officer must still have probable cause to believe the item is contraband. Id at 377. The officer may not manipulate an object previously determined not to be a weapon in order to determine its incriminating nature. Id. See also. *Evans,* supra at fn. 5. If the item must be manipulated to determine its nature, then a further search has been conducted. Id. Generally, for the item to be removed, it must either be clearly contraband or be of the size and density of a weapon. *Evans*, supra at 415. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, supra at 366-67. See also, *Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

{¶11} In this case, Olding was frisked because of his behavior and because the officers were concerned he might have been armed. Pursuant to *Terry*, this is permissible. The *Terry* pat down search was performed by Howell and Howell

was the officer who found the contraband. However, Howell did not testify at the suppression hearing. The State presented the testimony of only Pleiman, who did not perform the search. Pleiman testified as follows.

> **Deputy Howell placed him in handcuffs, and he was on the ground. Did not locate anything. He then stood him up so he could do a better patdown, make sure he didn't have any weapons.**
>
> **At that time Deputy Howell found, I believe, a white sock in the coat pocket and handed that to Deputy Dotson who showed up by that time, and Deputy Dotson looked inside that sock and found two bags of cocaine that was wrapped in, like, a napkin or tissue paper.**

March 3, 2009, Tr. 17. At the time of the search, Olding was not under arrest. The reason for the stop was the headlights flickering on the car and a lack of a rear license plate. Pleiman testified that he was questioning Olding's passenger to see if any other criminal behavior had occurred, which made Olding angry. The sole reason given for Olding's arrest was the drugs found during the search. Thus, if the contraband was improperly seized, then the arrest and any subsequent statements following the arrest were improper and should have been suppressed.

{¶12} The State failed to put on any evidence that would indicate that the contraband was properly seized. Howell did not testify at all. Pleiman did not testify to any comments made by Howell that would indicate that the contraband was either suspected of being a weapon or that it was clearly contraband. According to Pleiman, the contents of the sock, which was removed from

Olding's pocket, were not known until the sock was opened and the tissue paper was unwrapped. This is clearly a manipulation of the item and a violation of the standard set forth in *Dickerson*, supra. Without evidence that Howell had knowledge that the item he felt was contraband when he removed the item from the pocket, the search does not comply with the narrow constraints of *Terry*. See *Dickerson*, supra; *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201; and *Sibron*, supra. Based upon the failure of the State to present any evidence to show that the seizure of the contraband was proper, this court has no choice but to find that the trial court should have suppressed the results of the search and any fruits of the search. The first assignment of error is sustained.

{¶13} In the third assignment of error, Olding claims that he should not be charged with conveying a prohibited substance into a detention facility since he did not voluntarily enter the detention facility. At oral argument, Olding conceded that this issue has recently been directly addressed by the Ohio Supreme Court in *State v. Cargile*, 123 Ohio St.3d 143, 2009-Ohio-4939, 916 N.E.2d 775. In *Cargile*, the Ohio Supreme Court determined that a person taken to a detention facility pursuant to an arrest and who possesses a prohibited item at the time he or she is taken to the facility, has the requisite actus reus. Given this ruling, this court must follow the mandate of the Ohio Supreme Court and determine that the drugs were voluntarily taken into the facility. However, since the testimony

concerning the pat down search and discovery of the drugs was insufficient, the drugs found during that time should have been suppressed. Thus, Olding would not have been taken into custody and would not have transported the drugs into the facility. The third count of the indictment should have been dismissed. For this reason, the third assignment of error is sustained.

{¶14} For the reasons set forth above, the judgment of the Court of Common Pleas of Shelby County is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ROGERS, J., concurs.**

**/jlr**

**SHAW, J., concurs in part and dissents in part.**

{¶15} I concur in the majority decision regarding the video in the second assignment of error. I respectfully dissent as to every other aspect of the majority decision.

{¶16} In my view, the testimony of the police officer who was an eyewitness to the totality of circumstances in this case, including the disorderly conduct of the defendant at the scene and the resulting pat down and search of the

defendant at the scene, is sufficient to establish all of the requisite grounds for the arrest and transport of the defendant. And, while the testimony of the officer who conducted the pat-down would always be the better practice at a suppression hearing, I do not agree with the rule implied by the majority decision that only the testimony of the officer who personally conducted the pat-down is sufficient in any given case to establish probable cause for a contraband arrest.

{¶17} I would affirm the decision of the trial court in its entirety.

**/jlr**